[No. 1536-2.    Division Two.    April 22, 1976.]

KENNETH K. HAUGEN, *Respondent*, v. MINNESOTA MINING AND MANUFACTURING COMPANY, *Appellant.*

*Harold E. Winther* (of *Small & Winther*), for appellant.

*Frank August Peters* and *H. Frank Stubbs*, for respondent.

REED, J.—Plaintiff, Kenneth K. Haugen, lost an eye when a grinding disc manufactured by defendant, Minnesota Mining and Manufacturing Company (hereafter 3M), exploded into three pieces, one of which struck him in the eye. A Pierce County Superior Court jury awarded plaintiff $100,000 for his injuries, and 3M appeals from the judgment entered on that verdict. Although plaintiff's complaint was based on the theories of negligence, breach of express and implied warranties, and strict liability in tort, the case was tried and submitted to the jury on only the latter theory.

Defendant's numerous assignments of error raise five legal issues on appeal: (1) Did plaintiff produce sufficient evidence to avoid defendant's motion to dismiss at the close of plaintiff's case? (2) Did the court correctly instruct the jury on the defense of assumption of risk in a strict liability case? (3) May a manufacturer's failure to warn of a potentially unreasonable danger in a product, by itself, constitute a defect in the product? (4) Did the trial court abuse its

discretion by limiting the scope of defendant's inquiry into plaintiff's criminal record? (5) Was defendant prejudiced by plaintiff's counsel's violation of a pretrial order in limine during closing argument? We resolve each issue in plaintiff's favor and affirm the judgment.

The accident resulting in plaintiff's injuries occurred on October 24, 1972, in a radiator repair shop owned and operated by Robert Thomas, a friend of the plaintiff. Plaintiff had voluntarily gone to the shop to assist Thomas in the remodeling of his 1961 Ford van, and was not employed by Thomas. Plaintiff had held numerous jobs requiring the use of power tools and equipment and had received some safety training while employed in such a capacity for the Boeing Company. The accident occurred while plaintiff was making a new dashboard for the van out of hardboard. Having placed the hardboard and the old metal dashboard, which he was using as a pattern, in a vise on a workbench, plaintiff picked up a "Blue Dart" pneumatic power grinder, attached to which was the allegedly defective grinding disc, and commenced grinding on the hardboard. Plaintiff testified that the following then occurred:

> I held the sander . . . and I hit the speed a couple of times to get it spinning, and came down lightly across here. I let off on the trigger and I believe I said something to Bob Thomas about sanding excessively easy, like butter, and then I proceeded to sand across here again, and work on this edge a little bit, and I made one pass down the side, and one pass down again. I got approximately here and was struck in the face, and that's what I know of what I was sanding. I don't know what happened exactly after that.

Testimony of other witnesses revealed that the disc had exploded into three pieces; one piece imbedded itself in a metal can of hand cleaner on the workbench, another flew across the shop and landed 30 feet from the workbench, and the third piece struck plaintiff in the face, slicing through his glasses and causing the loss of an eye.

The power grinder and disc belonged to Leonard Veitenheimer, the proprietor of an auto body shop in the same

building as Thomas' radiator shop, who had loaned the tools to Thomas for use during the remodeling of his van. The day before the accident Veitenheimer had placed the disc in question on the grinding machine after which Thomas used it for approximately 30 minutes to an hour to grind rough spots on the metal body of the van. Veitenheimer testified that the type of disc which shattered was designed for use on either metal or wood and depending on the use to which it is put, should last from 3 to 4 days. The plaintiff testified that prior to using the grinding disc on the day of the accident he had inspected it and it appeared "perfectly new."

■ Defendant first argues the trial court erred in denying its motion to dismiss at the close of plaintiff's case. When made in a case before a jury, a motion to dismiss challenging the sufficiency of the plaintiff's evidence is treated as a motion for a directed verdict made pursuant to CR 50(a). *See Warren v. Hudson Pulp & Paper Corp.*, 477 F.2d 229 (2d Cir. 1973). In ruling on a motion for a directed verdict, the court must accept the truth of the nonmoving party's evidence and all reasonable inferences which may be drawn therefrom, interpreting the evidence most strongly against the movant. *Leach v. Weiss*, 2 Wn. App. 437, 439, 467 P.2d 894 (1970).

■ To establish a prima facie case in a suit brought upon the theory of strict liability in tort for the manufacture of a defective product, a plaintiff must show (1) there was a defect in the product which existed when the product left the hands of the manufacturer; (2) the defect was not known to the user; (3) the defect rendered the product unreasonably dangerous; and (4) the defect was the proximate cause of the injury. Restatement (Second) of Torts § 402 A (1965); *Bombardi v. Pochel's Appliance & TV Co.*, 9 Wn. App. 797, 801, 515 P.2d 540 (1973), *reaff'd as modified*, 10 Wn. App. 243, 518 P.2d 202 (1973); *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969).

Plaintiff's expert witness, C. V. Smith, who had vast experience and education in the field of abrasives and had

worked extensively with grinding instruments, explained the tests which he had performed on the pieces of the disc in question, and concluded that the disc had shattered because it had been improperly "heat-cured" during manufacture, rendering it susceptible to softening and "fluting" when used in a normal manner. This testimony, in conjunction with the plaintiff's statement that the disc appeared to be "perfectly new" and the testimony concerning its limited prior use, constituted sufficient prima facie evidence that the disc was in a defective condition at the time it left the hands of the manufacturer, thereby satisfying the first requirement established in *Bombardi v. Pochel's Appliance & TV Co.*, *supra*. That plaintiff was unaware of the specific defect in the grinding disc was clearly established by his statement concerning the apparently "new" condition of the disc prior to its use by him. That the defect rendered the product unreasonably dangerous and was, prima facie, the proximate cause of plaintiff's injury can be readily inferred from the testimony concerning the details of the accident. Viewing the evidence and the inferences therefrom in a light most favorable to the plaintiff, we are satisfied that a prima facie case was presented and conclude that the trial court was correct in denying defendant's motion to dismiss at the close of plaintiff's case.

3M next assigns error to instruction No. 18, concerning the defense of assumption of risk:

> The defense of assumption of risk has been claimed by defendant as a defense to deny plaintiff's recovery.
>
> Before the doctrine of assumption of risk can apply to deny the plaintiff recovery, it must be proved by the defendant by a preponderance of the evidence, that:
>
> (1) the plaintiff actually knew and appreciated the specific defect involved, and
>
> (2) that actually knowing and appreciating the specific defect involved, that plaintiff voluntarily and unreasonably took his chances and exposed himself to that defect and the resulting danger, and
>
> (3) that this specific known and appreciated defect and danger was the cause of plaintiff's injury.
>
> It is not enough to bar recovery by the plaintiff on the

defense of assumption of risk that the plaintiff knew that there was a general danger connected with the use of the product, but rather it must be shown that the plaintiff actually knew, appreciated, and voluntarily and unreasonably exposed himself to the specific defect and danger which caused his injuries.

Defendant contends that the instruction erroneously states the law concerning the defense of "assumption of risk" in a suit based upon strict liability. In particular, 3M asserts that a plaintiff need not be aware of the specific defect (in this case the allegedly inadequate "heat-cure") to be said to have assumed the risk of injury. Rather, defendant argues, if a plaintiff is aware of the general danger associated with the use of a particular product he may assume the risk of injury by not taking precautionary measures to protect himself from that danger. Applying this theory to the instant case, defendant directs our attention to the fact that plaintiff was not using safety goggles at the time of the accident even though two pairs were available in the auto body repair shop. This omission on the part of the plaintiff is alleged to constitute an assumption of the risk of injury in light of plaintiff's prior safety training as to the advisability of using safety goggles when working with power-grinding equipment. Defendant's argument is based upon a misunderstanding of the defense of assumption of risk in a case based upon strict liability.

█ Assumption of risk is recognized as a defense in a strict liability case under the circumstances explained in comment *n* of the Restatement (Second) of Torts § 402 A (1965):

> Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, *or to guard against the possibility of its existence*. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the de-

fect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

(Italics ours.) Comment *n* to § 402 A has been adopted by the courts of this state as the correct statement of the defense of assumption of risk as it relates to strict liability in tort for the manufacture of a defective product. *Seattle-First Nat'l Bank v. Tabert*, 86 Wn.2d 145, 155, 542 P.2d 774 (1975); *Stark v. Allis-Chalmers*, 2 Wn. App. 399, 467 P.2d 854 (1970); *Brown v. Quick Mix Co.*, 75 Wn.2d 833, 454 P.2d 205 (1969). In the instant case, plaintiff testified that he was aware that dust or small particles of wood were likely to be thrown from the dashboard while he was grinding on it. He further testified that he did not deem it necessary to wear the available safety goggles because he felt that his eyeglasses would provide adequate protection from this danger. If plaintiff assumed any risk at all, it was the risk of having dust or small particles of wood or metal lodged in his eye during the grinding process. He was obviously not aware of the latent defect in the structural integrity of the disc itself and the danger posed by that defect. This latent defect was not and probably could not have been known by the plaintiff. Plaintiff, therefore, could not have assumed the risk engendered by the defect.

To accept 3M's argument would be to ignore that portion of comment *n* of Restatement (Second) of Torts § 402 A which expressly relieves the user of a product from the responsibility for guarding "against the possibility" that a latent defect exists. The responsibility for discovering such latent defects or warning that they may exist is placed upon the manufacturer as a matter of public policy. *See Bombardi v. Pochel's Appliance & TV Co.*, *supra* at 805. We hold, therefore, that instruction No. 18 correctly stated the law of assumption of risk in a case involving strict liability for the manufacture of a defective product.[1]

[1]We note, although plaintiff has not cross-appealed, that instruction No. 18 should not have been given at all in the instant case. Although it correctly states the law, there was no evidence from which the jury could have found that the plaintiff did in fact discover the specific

Defendant next contends the court erred by giving instruction No. 14, concerning a manufacturer's "duty to warn," in a products liability case grounded upon strict liability. The jury was instructed as follows:

> If the product, in this case the grinding disc, is dangerous to the ultimate user unless he uses safety goggles, the manufacturer must give warning of the hazard in some manner that will warn the ultimate user. If the failure to warn is a proximate cause of the injury, the manufacturer is liable.

3M contends that the above instruction was inappropriate in this case because the plaintiff was aware of the general risks involved in using grinding discs such as the one in question. In support of this argument, defendant cites the following portion of comment *j* to the Restatement (Second) of Torts § 402 A:

> But a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized.

In essence, the defendant asserts that the danger inherent in the use of a grinding disc is "generally known and recognized," *i.e.*, it is patent, thereby making any warning of such danger by the manufacturer unnecessary. We disagree. Assuming, for the sake of argument, that the propensity of a grinding disc to throw off dust or small particles of grit during the grinding process is "generally known and recognized," it does not follow that a user of a grinding disc, whether he be an ordinary consumer working in his garage at home or someone with job-related training in the use of power grinders, would reasonably expect that a grinding disc would violently explode in the second hour of normal use.

Defendant also contends that giving the "failure to

defect which caused his injury. In the absence of such evidence the instruction should not have been given. *Haynes v. Moore*, 14 Wn. App. 668, 672, 545 P.2d 28 (1975).

warn" instruction, when the case was presented solely on a strict liability theory injected a "negligence" standard into the case and thereby misled the jury. Again, we do not agree. In a strict liability case, a manufacturer's liability may be established in a variety of ways; among these are: (1) showing the *design* of the product rendered it unreasonably dangerous; (2) establishing that, regardless of the degree of care exercised by the manufacturer, a product was *defectively manufactured* thereby rendering it unreasonably dangerous; or (3) showing a product is defective, though faultlessly manufactured, if it is unreasonably dangerous when placed in the hands of the ultimate user by a manufacturer *without giving adequate warnings* concerning the manner in which to safely use it. Although most often associated with causes of action based upon negligence, *see, e.g., Ewer v. Goodyear Tire & Rubber Co.*, 4 Wn. App. 152, 480 P.2d 260 (1971), a failure to warn may also subject a manufacturer to strict liability in a proper case. The distinction between the warning requirement in cases based upon negligence on the one hand, and strict liability on the other, has been explained as follows:

> While the distinction drawn between a negligent failure to warn and the warning requirements for strict tort purposes might seem illusive, it is nonetheless quite significant because it clearly points out the different bases for the two theories. Under the strict tort doctrine the emphasis is on the product and the danger it poses to the public, while under the negligence concept the emphasis is on the reasonableness of the conduct of the manufacturer. The degree of care exercised by the manufacturer is irrelevant for strict tort purposes. Since foreseeability is not germane in a strict tort setting, the question arises whether or not a manufacturer is liable for failure to warn even though he could not have discovered the danger with the exercise of due care. . . . If the manufacturer is liable for defective design or defective construction without regard to the degree of care exercised in manufacturing the product, there is no logical reason why liability should be denied where the product poses a danger to the public because of a lurking danger which was not exposed by the manufacturer.

(Footnote omitted.) 2 L. Frumer & M. Friedman, *Products Liability* § 16A[4], at 3-336.3 (1960). We adopt the above reasoning and hold that a manufacturer may be held strictly liable if a plaintiff establishes that a product is unreasonably dangerous, though faultlessly manufactured, when placed in the hands of a user without giving suitable and adequate warnings or instructions concerning the safe manner in which to use it. *See Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421 (1974).

In the instant case, after thoroughly reviewing the record, we conclude there was sufficient evidence to support the "failure to warn" instruction. Strange as it may seem, the necessary evidence was introduced by 3M while attempting to establish plaintiff's assumption of risk, or contributory negligence. Defendant called a Professor Breysse, apparently to establish that the glasses worn by plaintiff at the time of the accident were not safety glasses, and also to establish the necessity for wearing safety goggles or shields while using a grinding disc. Professor Breysse testified on redirect examination as follows:

> Q [By defendant's counsel] Would you feel that a person who is working in a grinding situation such as this, or in a shop in working in that type of situation, if he is going to do that without safety goggles, that he is placing himself in a dangerous situation?
> A [Professor Breysse] Yes.

Professor Breysse had earlier testified that there were safety goggles available on the market which serve the purpose of protecting the eyes by resisting the impact and penetration of flying objects, as distinguished from the type of safety goggle which is designed to keep particles of dust or grit out of the eyes. This testimony was sufficient to present to the jury an instruction regarding defendant's failure to warn the user or consumer to wear an impact resistant safety goggle while using a grinding disc such as the one in the instant case.

We do not approve, however, of the specific language contained in instruction No. 14. The primary defi-

ciency in the instruction is that it fails to instruct the jury in terms of "unreasonable danger." Virtually any tool on the market today, including the ordinary screwdriver or hammer, may be dangerous to the ultimate user if used in an improper manner or for an unintended use. It is for the jury to determine whether the danger so presented is unreasonable in the absence of some warning or instruction by the manufacturer concerning safety precautions which should be taken to prevent injury. However, defendant did not except to the instruction on these grounds, but rather argued to the trial court that the plaintiff was not an ordinary user because of his prior experience with power tools and the safety training he had previously received. This exception was not sufficiently specific or definite to apprise the trial court of the legal deficiency in the instruction. Accordingly, defendant's objection to the instruction was not adequately preserved for review and therefore, cannot be urged as a basis for reversal. *Moore v. Mayfair Tavern, Inc.,* 75 Wn.2d 401, 407, 451 P.2d 669 (1969); CR 51(f). 3M urges it should not be bound by this rule because plaintiff did not submit the challenged warning instruction prior to trial as required by CR 51 but rather submitted it on the day the instructions were to be given to the jury. We are not persuaded by this argument, because, again, it was not presented to the trial court. Had the trial court been apprised that defendant needed more time to research the legal ramifications of the instruction, it may well have granted defendant a continuance for that purpose had it been invited to do so.

Defendant's next assignment of error concerns the trial court's order in limine restricting inquiry into plaintiff's criminal background to asking: "Have you ever been convicted of a crime?" RCW 5.60.040 permits introduction of a prior conviction to impeach the credibility of a witness in a civil action. The extent to which the matter may be pursued after asking the above question rests within the sound discretion of the trial court. *Mullin v. Builders Dev. & Fin. Serv., Inc.,* 62 Wn.2d 202, 210, 381 P.2d 970 (1963).

Plaintiff in the instant case had pleaded guilty to the crime of manslaughter in 1973 and was given a deferred sentence by the same judge who presided over the instant case. We cannot say that the judge abused his discretion in limiting defendant's inquiry as he did. The potential prejudice which could be engendered by a detailed inquiry into the collateral matter of plaintiff's criminal record provides a more than adequate basis to support the trial court's ruling.

■ 3M recognizes the above rule and does not forcefully contend that the trial court abused its discretion in ruling as it did insofar as the ruling was based on RCW 5.60.040. However, 3M contends plaintiff's criminal record was admissible not only to affect his credibility as a witness, but was also relevant to the issue of the appropriate amount of damages to be awarded for the impairment of plaintiff's future earning capacity. 3M argues that one who has been convicted of a violent crime such as manslaughter is less likely to obtain and hold employment than is a person without such a conviction. Questions of relevance of evidence otherwise admissible are within the sound discretion of the trial court and will not be reversed absent a manifest abuse of discretion. *State v. Grant*, 9 Wn. App. 260, 270, 511 P.2d 1013 (1973); *Chase v. Beard*, 55 Wn.2d 58, 346 P.2d 315 (1959). We note that defendant's argument concerning the potential effect of plaintiff's criminal record on his future employment possibilities rested on pure speculation and conjecture. Defendant did not offer to prove that plaintiff had in fact been denied employment because of his prior conviction nor did it offer expert testimony concerning the employment record of convicted criminals. We cannot say that the trial court abused its discretion in ruling as it did.

Defendant's final assignment of error pertains to remarks made by plaintiff's counsel during closing argument concerning the "safety qualities" of the glasses worn by plaintiff at the time of the accident. Prior to trial, the trial court entered an order in limine on defendant's motion restraining plaintiff, his counsel, and his witnesses from

making any mention, directly or indirectly, during voir dire, opening statement, interrogation of witnesses, objections, argument, and/or recess during the trial hereof, without first obtaining permission from the Court outside the presence and hearing of the jury, of any statement that the eyeglasses worn by the plaintiff at the time of the injury possessed any extraordinary or unusual safety or protective qualities, features or design distinguishable from prescription glasses intended for ordinary use and wear; . . .

During closing argument, plaintiff's counsel attempted to persuade the jury that plaintiff's glasses were in fact safety glasses because they had been issued to plaintiff by the Marine Corps prior to his participation in boot camp. Defendant interposed an objection during the course of this argument on the ground that there was no evidence in the case that the glasses worn by plaintiff were, in fact, safety glasses. The court permitted the argument to continue without choosing to enforce its order in limine. We find no error in this ruling. Defendant's objection to the remarks of plaintiff's counsel was not based upon the order in limine, but rather was phrased in terms of a lack of evidence of the facts argued. 3M made no motion for mistrial, requested no curative instruction, and failed to ask that the jury be removed in order to remind the court of its order. Defendant could not have been prejudiced by plaintiff's counsel's remarks in any event because it had already introduced the question of the safety quality of plaintiff's glasses at several points during the trial. We find no merit in this assignment of error.

Defendant has also assigned error to the giving of several other instructions and the refusal to give several of its proposed instructions. None of these instructions is set out by defendant in its brief and accordingly, we need not consider them on appeal. CAROA 43; *State v. Scherck*, 9 Wn. App. 792, 514 P.2d 1393 (1973).

The judgment is affirmed.

PETRIE, C.J., and PEARSON, J., concur.