[No. 3055–2.   Division Two.   April 18, 1978.]

DARLENE LITTLE, *as Administratrix, Appellant,* v.
PPG INDUSTRIES, INC., *Respondent.*

*Robert V. Brown, Lawrence B. Linville,* and *Clinton, Fleck, Glein & Brown,* for appellant.

*Fred T. Smart, Patrick J. Clarke, John F. Biehl,* and *Lee, Smart, Cook, Dunlap & Biehl,* for respondent.

PEARSON, C.J.—Darlene Little appeals from a jury's defense verdict in her wrongful death action based on her husband's death while allegedly using a chemical product manufactured by PPG Industries, Inc. The major issue is whether the trial court was obligated to instruct the jury on plaintiff's theory of strict liability due to the inadequacy of the warning on the label of PPG's product. We order a new trial.

Mrs. Little's husband, Robert, was a millwright helper at Bethlehem Steel's Seattle plant. His job entailed cleaning, inspecting, and repairing industrial machinery and cleaning up work areas.

January 25, 1970, was Mr. Little's first day on the job after a period of absence due to illness. He was assigned to replace an oil pump on a mill at the plant. Following that,

during the "lunch" break at 3 a.m., he complained to a fellow workman of feeling sick. He remained at work, however, and was assigned after lunch to clean up an oil spill in the cellar under the mill where he had been working. The oil cellar is a small space about 6 feet below floor level and was poorly ventilated. At some time during the next hour, Klon Turner, the millwright, stopped by the cellar, observed Mr. Little, and handed down to him a bucket of what he assumed to be kerosene, to help in the clean–up task. At about 4:30 he returned to the cellar and found Mr. Little dead, lying face down in about 4 inches of water with his arm across a sump pump, preventing it from pumping the liquid out of the cellar.

Dr. Gale Wilson, in 1970 the chief medical examiner for King County, testified on the basis of an autopsy that the immediate cause of Robert Little's death was essentially drowning, with his collapse and immersion of his face in liquid precipitated by intoxication with a substance known as methyl chloroform or 1,1,1 Trichloroethane. Dr. Wilson testified that the vapors from this chemical, when inhaled in increasing concentration, would produce incoordination, dizziness, and even anesthesia. A forensic pathologist, Dr. Frederick Lovell, testified further that the amount of 1,1,1 Trichloroethane found in the deceased's blood, 2.3 milligrams percent, was enough to have precipitated his death in the manner described by Dr. Wilson.

The chemical in question, 1,1,1 Trichloroethane, had been purchased by Bethlehem Steel from two suppliers over a period of years for use as a cleaning solvent. It is a potentially deadly substance if used in poorly ventilated areas. Dow Chemical supplied its product under the brand name Chlorothene, and PPG's product, in a green barrel with a white stripe around its middle, is called Tri–Ethane. Barrels of the PPG brand had the following notice lettered on the middle stripe:

Caution: Vapor may be harmful. Use with adequate ventilation. Avoid prolonged or repeated breathing of vapor.

Both brands were in use at the plant on or about the date of death, and there was evidence—although contested—from which the jury could have decided that Mr. Little was using Tri–Ethane to aid in his clean–up duties when he died.

Dr. Lovell, who had participated in research into deaths caused by 1,1,1 Trichloroethane intoxication and conducted a safety labeling of chemicals program at a hospital, testified that the PPG label should contain "vapor may be deadly" in red lettering, and that "use with adequate ventilation" should be more prominent on the label, *i.e.*, the same size as other lettering. Dr. Wilson was trained in pharmacology labeling, and in his opinion the PPG label was insufficient to make the casual user aware of how inherently dangerous the solvent can be. He suggested that such substances should be labeled with a skull and crossbones in a conspicuous place, with a yellow background, and that the label contain appropriate words such as "very dangerous," "highly toxic," or "poisonous," and "vapor fumes dangerous if inhaled."

Plaintiff pleaded both negligence and strict products liability as theories of recovery. However, at the time the parties took exception to the instructions, the position of plaintiff's counsel on which theories should go to the jury was somewhat ambiguous. Plaintiff pressed for an instruction in accordance with the strict products liability theory of section 402A, Restatement (Second) of Torts (1965),[1] which instruction the trial court refused to give. Plaintiff also urged the trial court to withdraw a contributory negligence instruction on the grounds such defense was not available in a case involving strict products liability.

[1] Restatement (Second) of Torts § 402A (1965) reads as follows: "Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

 "(a) the seller is engaged in the business of selling such a product, and

 "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

However, plaintiff did not specifically move to abandon the negligence theory. Instead, counsel made this statement while taking exception to the applicability of contributory negligence.

> We except to the court's instruction No. 7, which sets forth the definition of contributory negligence, and instructs the jury with respect to the manner in which they should apply the doctrine of contributory negligence.
>
> *In addition thereto, we respectfully except to the court including therein a definition of negligence since we feel negligence is not an issue in this case, the evidence being governed by strict liability [in] tort.*

(Italics ours.) Plaintiff also excepted to the verdict forms which, in essence, caused the jury to make their determination of liability solely on the negligence theory. Despite some ambiguity in plaintiff's position, we think the quoted exception adequately confirmed plaintiff's desire to abandon a negligence theory and rely solely upon strict liability.

Plaintiff's position on appeal is also ambiguous, since she urges, on the one hand, the inconsistencies between negligence and strict liability in a "duty to warn" case, while on the other hand urging that it would have been proper for the trial court to instruct the jury on both theories. Plaintiff's appeal does clearly urge error in the court's failure to allow the jury to consider the strict liability theory, and we think this contention is well taken.

The pivotal issue is whether the facts warranted submission of a strict liability theory to the jury, where the only possible defect in the product was a failure to warn adequately of the potential lethal characteristics of the product.

---

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

We frame this as the issue because, while the court did give two instructions which arguably fit the strict liability mold,[2] the verdict forms effectively deprived plaintiff of any theory except negligence. Also, none of the court's instructions differentiated between a manufacturer's duty to warn under traditional negligence concepts, and the manufacturer's duty to furnish a product which is not rendered unreasonably dangerous because of inadequate warnings. Restatement (Second) of Torts § 402A. A related issue is whether the jury should be instructed on both negligence and strict liability under the facts of this case.

For the reasons stated below, we are of the opinion that the evidence, construed in a light most favorable to the plaintiff, was sufficient to warrant instructions consistent with Restatement (Second) of Torts § 402A; as plaintiff was deprived of this theory she should be granted a new trial. We are further persuaded that on retrial plaintiff will receive no benefit from a negligence theory of recovery and that instructing on such theory under the facts of this case would serve only to confuse the jury.

In *Haugen v. Minnesota Mining & Mfg. Co.*, 15 Wn. App. 379, 550 P.2d 71 (1976), we considered the applicability of strict liability in a case involving the manufacturer's failure to warn adequately of the hazards involved in

---

[2]Instruction 13 stated:

"A manufacturer of a product must give warning of any dangerous propensities of a product manufactured or sold by him, which are inherent in the product or its use and which the user of the product would not ordinarily discover.

"The warning should be such that, if followed, would make the product safe for users.

"To fulfill this duty, the manufacturer has two obligations. First, he must appropriately label the product in such a form that it could be reasonably expected to catch the attention of the user in the circumstances of its use and be of such a nature as to be reasonably comprehensible to the average user. Secondly, the manufacturer must appropriately label the product, giving due consideration to the seriousness of consequences from failure to so label it as to warn of any dangers that are inherent in its use or that may arise from the improper handling or use of the product."

Instruction 14 stated:

"A manufacturer of a product is under a duty to test, analyze and inspect his product and is charged with knowing what such tests would have revealed."

the use of its product. We concluded at page 387 that a manufacturer's liability may be established by

> showing a product is defective, though faultlessly manufactured, if it is unreasonably dangerous when placed in the hands of the ultimate user by a manufacturer *without giving adequate warnings* concerning the manner in which to safely use it.

*Accord, Haysom v. Coleman Lantern Co.,* 89 Wn.2d 474, 573 P.2d 785 (1978).

█ In the case at bench, plaintiff put on sufficient expert opinion and circumstantial evidence, despite defense testimony to the contrary, that the PPG solvent was the proximate cause of Robert Little's death, that it is the kind of product which is inherently dangerous to the user unless adequate warnings are given, and that the warnings given were inadequate. Therefore, plaintiff was entitled to have the jury consider the strict liability theory espoused by her proposed instructions, and to have the jury decide whether PPG's alleged failure to warn adequately rendered the product unreasonably dangerous without regard to the adequacy of the warning as judged by negligence standards of reasonableness. *Hamilton v. Hardy,* ___ Colo. App. ___, 549 P.2d 1099 (1976). *See* Restatement (Second) of Torts § 402A.

In this regard, plaintiff proposed one instruction which paraphrased Restatement (Second) of Torts § 402A and another which states the plaintiff's burden to prove that the manufacturer failed in its duty to warn of the dangers inherent in its product, thereby rendering the product inherently dangerous.[3] These instructions were correct statements of the law and should have been given. A party is entitled to have the court instruct the jury on his theory of the case if there is substantial evidence to sustain it. *Langan v. Valicopters, Inc.,* 88 Wn.2d 855, 567 P.2d 218 (1977).

---

[3]The proposed instructions provide as follows:

"1. One who manufactures a product in a defective condition unreasonably dangerous to the user or consumer is subject to liability for physical harm thereby

We now consider the appropriateness of instructing the jury on both negligence and strict liability where the defect involves only the adequacy of the warnings. Understandably, there is confusion in the developing case law as to whether the "failure to warn" cases should go to the jury under both theories. *See generally* Annot., 53 A.L.R.3d 239 (1973).

Negligence has been the traditional theory of recovery against a manufacturer who fails to give adequate warning of the hazards involved in the use of the product which are known to the manufacturer or in the exercise of reasonable care should have been known to the manufacturer. Restatement (Second) of Torts § 388; *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967).

It is also apparent that in several jurisdictions, including Washington, the theories of strict liability and negligence are not mutually exclusive, and in appropriate cases, where plaintiff may benefit from having the case submitted under both theories, it is proper to do so. *See Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969); *Jiminez v.*

---

caused to the ultimate user or consumer, if

"(a) the manufacturer is engaged in the business of making such a product, and

"(b) is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"The rule stated above applies although

"(a) the manufacturer has exercised all possible care in the preparation and sale of his product and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

"2. The plaintiff has the burden of proving the following propositions:

"First, that the defendant failed sufficiently to warn of the dangers inherent in its product and that thereby the product was rendered unreasonably dangerous;

"Second, that plaintiff suffered damages;

"Third, that the defendant's failure sufficiently to warn of the dangers was a proximate cause of the plaintiff's damages.

"If you find from your consideration of all the evidence that each of these propositions has been proved, your verdict should be for the plaintiff. On the other hand, if any of these propositions has not been proved, your verdict should be for the defendant."

*Sears, Roebuck & Co.,* 4 Cal. 3d 379, 482 P.2d 681, 93 Cal. Rptr. 769, 52 A.L.R.3d 92 (1971).

In *Haugen v. Minnesota Mining & Mfg. Co., supra,* we considered the distinction between the two theories as they are applied to a "failure to warn" claim. We noted that the theory of negligence focuses on the reasonableness of the conduct of the manufacturer in warning of the product's dangers, whereas strict liability will apply even if the manufacturer who sells its product has exercised all reasonable care in preparing and marketing it. This is because, quite apart from questions of reasonable care, the "article can have a degree of dangerousness because of a lack of warning which the law of strict liability will not tolerate . . ." *Phillips v. Kimwood Mach. Co.,* 269 Ore. 485, 498, 525 P.2d 1033, 1037 (1974), quoting from *Roach v. Kononen,* 269 Ore. 457, 525 P.2d 125 (1974). *See also Hamilton v. Hardy, supra* at 1106.

We also noted in *Haugen* that the degree of care exercised by the manufacturer or the foreseeability of the dangers involved in the use of the product are not relevant to the strict tort theory, while those factors are necessary elements of proof of the manufacturer's liability for a negligent failure to warn adequately of the hazards involved in the use of a product. For an excellent list of cases see 2 L. Frumer & M. Friedman, *Products Liability* § 16 A [4][f][vi] (1978 and Supp.).

■ Consequently, where the only claim of product defect is in the adequacy of warnings, and where plaintiff is unable to produce evidence that the manufacturer knew or in the exercise of reasonable care should have known of the hazard, and that it gave inadequate warnings, there is obviously no legal basis for instructing the jury on a negligence theory.

Even where the evidence is such that a jury might find that the manufacturer should have foreseen that without adequate warnings the product might be subject to misuse or involve other unreasonable hazards to the user, plaintiff

will normally benefit little, if any, from the negligence theory. In fact, instructing on both theories under these circumstances has a great potential for confusion. For the court must inform the jury, on the one hand, that they may find liability under strict tort principles, even though the manufacturer exercised reasonable care and complied with the prevailing knowledge and standards of the time, while on the other hand, the negligence theory requires the jury to be instructed that the manufacturer has breached a duty to plaintiff only where it knew or reasonably should have known of the particular hazard involved and failed to furnish adequate warning thereof.

It is true as plaintiff contends that Restatement (Second) of Torts § 402A, comment *j* suggests that strict liability for failure to warn is based upon the manufacturer's knowledge or reasonable imputation of knowledge of the danger. But this suggestion is incongruous, since it shifts the emphasis away from the condition of the product (strict liability) and back to the reasonableness of the manufacturer's conduct (negligence). Aside from situations in which a danger is obvious or known to the user,[4] strict liability (as distinct

---

[4]In *Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 573 P.2d 785 (1978), our Supreme Court adhered to the rule that a warning need not be given if the product's dangerous propensities are obvious or known to the user, and that unless the dangers associated with the use of a product can be said to be clearly latent, there is a jury question whether the dangers are so obvious or well known as to eliminate the necessity for warnings, as well as whether the warnings are adequate.

We disagree, however, with the statement in *Haysom v. Coleman Lantern Co.*, at page 479, that "a warning need not be given at all in instances where a danger is obvious or known." This goes too far. Obviously, a manufacturer should not have to warn consumers, for example, that a knife will cut a person or a hammer will inflict a nasty bump if improperly used. We do agree it is for the jury to decide if a danger which is not clearly latent is so obvious or well known that a failure to warn adequately will be excused. But, for the reasons previously expressed in *Palmer v. Massey–Ferguson, Inc.*, 3 Wn. App. 508, 516–18, 476 P.2d 713 (1970), we think it unwise to allow the manufacturer of a product with dangerous propensities to escape liability by declaring that in every instance where the danger is obvious or well known, no warnings will be required. See the excellent discussion in *Olson v. A.W. Chesterton Co.*, 256 N.W.2d 530, 535–37 (N.D. 1977).

from negligence) for a manufacturer's failure to provide adequate warnings does not depend on the manufacturer's knowledge of the danger. Such knowledge is assumed, *Phillips v. Kimwood Mach. Co., supra,* and it is the failure to give the adequate warning that renders the product unreasonably dangerous. *Hamilton v. Hardy, supra* at 1108; *Robbins v. Farmers Union Grain Terminal Ass'n,* 552 F.2d 788, 794 (8th Cir. 1977). *See Haugen v. Minnesota Mining & Mfg. Co., supra* at 387. Plaintiff's proposed instruction couched in terms of Restatement (Second) of Torts § 402A, comment *j* should not be given in this type of case.[5]

In summary, the general rule which we follow here is that a manufacturer can be held strictly liable for injuries resulting from the use of a defective product supplied in an unreasonably dangerous condition. And if the product has dangerous propensities—even though they are unknown to the manufacturer and reasonable care has been taken to make and market the product—unless the dangers are obvious or known to the user, the manufacturer will be held strictly liable if it has not adequately warned the user of the dangers inherent in the use of the product by, for example, affixing a proper label. This is because in the failure–to–warn case, the defect which makes the product "unreasonably dangerous" and allows the imposition of liability without proof of fault under Restatement (Second) of Torts § 402A, is in the absence of adequate warnings concerning the product's use, rather than any physical defect in the product itself. We conclude that in this type of case negligence instructions are inappropriate, as would be an instruction couched in terms of Restatement (Second) of Torts § 402A, comment *j.*

---

[5]The court's instructions Nos. 13 and 14, which appear in the margin at footnote 2, are correct statements of the developing law in "failure to warn" cases and should be given when the case is retried. However, the court's instructions Nos. 4, 7, 11, and 16, all predicated on a negligence theory, should not be given.

Finally, we consider respondent's assignments of error submitted by virtue of CAROA 16, which allows a respondent, without filing a cross appeal, to "present and urge any claimed errors by the trial court in instructions given or refused and other rulings which, if repeated upon a new trial, would constitute error prejudicial to the respondent." Under this provision, respondent challenges refusal of the trial court to instruct the jury on the doctrine of superseding or intervening cause, and its withdrawal from the jury of any question pertaining to the conduct of deceased's employer. Respondent's contention is that the evidence was sufficient to allow the jury to find that the neglect of Bethlehem Steel Company of Seattle toward its employees was such that the jury could find that such misconduct intervened or superseded the misconduct, if any, of respondent, so as to become the sole proximate cause of plaintiff's death.

For the reasons stated below, we agree with respondent's contention, and hold that the doctrine of superseding cause should be submitted to the jury when the case is retried.

■■ The Washington courts have not as yet addressed applicability of the doctrine of superseding cause to a case involving strict products liability. However, proximate causation is a required element of proof in strict products liability, and we see no logical reason the doctrine should not apply where the circumstances warrant its application. In W. Prosser, *Law of Torts* § 102, at 667–68 (4th ed. 1971), the author analyzes this question and discusses the exceptions to its application.

The effect, as a matter of "proximate cause," of negligence on the part of an intermediate buyer[6] of the product, has arisen in several cases. There is general agreement that the seller may reasonably anticipate that the buyer may fail to inspect the goods and discover their defects before he delivers them to the plaintiff, and that this or any other foreseeable negligence of the buyer, or

---

[6]For the purposes of this case, an industrial user who controls the use of products in its plant can be likened to an "intermediate buyer."

of his employees, or indeed of any other person, will not relieve the seller of liability.

> *On the other hand, it is ordinarily not reasonably to be expected that one who knows that a chattel is dangerous will pass it on to another without a warning. Where the buyer is notified of the danger, or discovers it for himself, and delivers the product without warning, it usually has been held that the responsibility is shifted to him, and that his negligence supersedes the liability of the seller.* This must, however, be qualified by the holdings in a few cases, that there are some products which are so highly dangerous, and so utterly unsuited for their intended use, that the responsibility cannot be shifted; and that even such discovery and deliberate failure to disclose will not relieve the seller. There are also decisions holding that where there is appreciable likelihood that the buyer will pass on the product without warning, and that any notice to him will not reach the ultimate user, there is liability for placing the product in his hands for marketing, even with such notice.
>
> *Although there have been few decisions, there is every reason to expect that the same conclusions, in general, will be reached when strict liability is in question.*

(Italics ours. Footnotes omitted.) We think these general principles are appropriate for application of the doctrine of superseding cause in a strict liability setting, and the doctrine is particularly appropriate where, as here, the "intermediate buyer" is a large industrial concern, with its own safety programs and methods of distribution of the product, and where the manufacturer may have no effective means of communicating its warnings to the ultimate user.[7]

Moreover, in applying the doctrine of superseding cause to the industrial user in a strict liability setting, we must be mindful of the well established law in Washington pertaining to superseding causation. Those principles were recently discussed in *Smith v. Acme Paving Co.,* 16 Wn.

---

[7]We do not subscribe to the theory advanced in some cases that the *duty* of the manufacturer to give adequate warnings is discharged when the industrial user receives supplemental warnings and fails to communicate those warnings to its employees. *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457 (5th Cir. 1976). We prefer the superseding cause analysis advanced by Dean Prosser.

App. 389, 396, 558 P.2d 811 (1976). There we stated that for the doctrine to insulate the original actor from liability, the trier of fact must find that "the intervening negligence is so highly extraordinary or unexpected that it can be said to fall without the realm of reasonable foreseeability . . ."

Applying these principles to the case at bench, we are persuaded that the evidence was sufficient to submit the issue of superseding cause to the jury.

Mr. Laverne Crossen, a Bethlehem Steel Company management representative in charge of employee safety, testified that on January 14, 1970, he received a memo from Bethlehem's home office advising him of two separate accidents involving four employees who were overcome and lost consciousness by overexposure to vapors from the solvent in question. The memo stated:

> Methyl chloroform belongs to a class of chlorinated solvents the vapors of which at sufficiently high concentration affect the central nervous system and can lead ultimately to respiratory failure.[8]

The memo also reiterated the requirement for adequate ventilation when the product was used. Mr. Crossen took no action with reference to this notice prior to the death of Robert Little, stating that he believed the area where Little worked was adequately ventilated to avoid the vapor hazard.

We think this notice, when added to the product label warnings on the barrels, was sufficient to warrant a conclusion by the trier of fact that Bethlehem knew of the danger of this product, and might reasonably be expected to furnish adequate warnings to its employees which might have prevented the death in question.

---

[8]There was also evidence that a notice had been received several years before 1970 discouraging use of this solvent in confined areas, and that a job safety analysis done at the plant had recommended against use of methyl chloroform for cleaning floors. There was also evidence that Bethlehem Steel refused several requests by PPG to allow its representatives to hold cooperative safety classes with Bethlehem's employees, and that Bethlehem was permitting use of the solvent in cleaning floors.

Reversed and remanded for a new trial.

PETRIE, J., concurs.

SOULE, J. (concurring in part; dissenting in part)—I concur in the result. I agree that the State of Washington recognizes that a manufacturer's liability may be established on a theory of strict liability by virtue of inadequate warnings. *Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 573 P.2d 785 (1978); *Haugen v. Minnesota Mining & Mfg. Co.*, 15 Wn. App. 379, 550 P.2d 71 (1976). It was therefore error to so phrase the interrogatories that the jury could not base a verdict upon this theory. I also agree that the doctrine of superseding cause should be considered in the event of a retrial.

I dissent from that portion of the decision which holds that upon retrial the theory of negligence should have no place in the proceedings.

Petition for rehearing denied June 8, 1978.

Review granted by Supreme Court November 3, 1978.