**No. C-1456**

**Donald L. Anderson v. Heron Engineering Company, Inc.**

(604 P.2d 674)

Decided October 9, 1979. Opinion modified and as modified rehearing denied December 24, 1979.

Lowell Fortune, P.C., Lowell Fortune, for petitioner.

Wood, Ris & Hames, P.C., William K. Ris, Charles E. Weaver, for respondent.

*En Banc.*

Per Curiam

The plaintiff, Donald Anderson, was injured while riding a chair lift at the Keystone ski area when the chair in front of him slipped back along the cable, striking his chair and knocking him thirty feet to the ground. The trial court entered judgment on a jury verdict for the defendant and the court of appeals affirmed. *Anderson v. Heron Engineering Company,* 40 Colo. App. 191, 575 P.2d 16, 17-18 (1977). We reverse.

The cause of the mishap was traced to failure of a cable clamp unit to secure the chair to the cable. The cable clamp unit had been designed, fabricated, and sold by the defendant, Heron Engineering Company (Heron), which also had sold the chair lift. The clamp unit consisted of a screw, a nut, an inner sleeve, and two jaws (including an inner jaw hidden from view) which gripped the cable.

Heron had furnished an operations and maintenance manual which Keystone's employees had used in disassembling, cleaning, and

reassembling the clamp unit the day before the accident. The manual recommended that eighty foot pounds of torque be applied to a screw which tightened a threaded nut of the inner jaw. Either because the threads on the nut were defective or dirty, or because Keystone's employees had not applied the recommended eighty foot pounds of torque to the screw, the torque applied to that screw was not transferred to the cable. The failure to transmit proper torque to the cable went unnoticed until after the mishap.

Anderson based his claims against Heron on strict liability under the *Restatement (Second) of Torts,* Section 402A (1965),[1] and on breach of express warranty. The trial court refused to instruct the jury that Heron could be held strictly liable for failure to provide more complete or detailed maintenance instructions or failure to warn of the consequences in the event the threading mechanisms should not mesh. Furthermore, the court refused to admit expert testimony of a test which could have detected the clamp unit failure. Moreover, the trial court declined to instruct the jury that it could find for the plaintiff on the express warranty claim if it found that Heron had warranted the chair lift to be "safe." Instead, the trial court submitted an express warranty instruction to the jury which predicated liability on a finding that Heron had "expressly warranted the grip to hold the chair to the cable without slipping."

I.

We deal initially with the issue raised by the plaintiff with respect to the express warranty instruction. Anderson argues that his tendered instruction, phrased in terms of an express warranty that the chair lift was "safe," should have been submitted to the jury. The term "safe" was used in a sales brochure prepared by Heron in connection with chair lift sales. However, the *only* testimony at trial on the subject of the brochure came from a former officer of Heron who testified merely that the brochure "could have been" supplied to Keystone when it purchased the chair lift in which Anderson was injured. The witness had no personal knowledge as to whether Keystone had in fact seen or relied on the sales brochure.

■ On remand, the trial court should give the plaintiff's tendered instruction, phrased in terms of a warranty that the chair lift was "safe," only if the jury is presented with evidence: (a) that the sales brochure which contained that warranty was seen or otherwise relied on by Keystone when it purchased the chair lift; or (b) that Heron expressly warranted the chair lift to be "safe" through a medium other than the sales brochure. *Dolan v. Mitchell,* 179 Colo. 359, 369-370, 502 P.2d 72, 77-78 (1972). *See generally* section 4-2-313, C.R.S. 1973; *Duncan v.*

---

[1] Adopted by this court in *Hiigel v. General Motors Corporation,* 190 Colo. 57, 544 P.2d 983 (1975).

*Commissioners,* 154 Colo. 447, 451-452, 391 P.2d 368, 370-371 (1964); *Kinard v. Coats Company, Inc.,* 37 Colo. App. 555, 559, 553 P.2d 835, 838 (1976).

## II.

We turn now to the issues raised by his appeal with respect to strict liability under Section 402A. A product which is free of manufacturing and design defects nonetheless may be defective and unreasonably dangerous if not accompanied by adequate instructions and warnings. *Union Supply Co. v. Pust,* 196 Colo. 162, _____n.1, _____, 583 P.2d 276, 280 n.1, 283 (1978); *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983, 988 (1975). The absence of sufficient instructions for safe use of a product, or failure to warn of the consequences if directions are not followed, may impose on a manufacturer the same liability it would incur for a manufacturing or design defect. *Id.* Thus the defendant's argument that the plaintiff asserted only a strict liability claim based on a product defect, but failed to assert one based on failure to warn, misses the point that failure to warn through adequate directions or instructions may itself amount to a product defect. *Id.*

Although the nature of defects may vary, the underlying theory of strict liability remains the same. The policy of enterprise liability embodied in Section 402A renders product manufacturers and distributors answerable for injuries and damages caused by product defects.[2] A manufacturer who places products into the stream of commerce must assume the risk of and responsibility for injuries and damages proximately caused by those products when they turn out to be defective. *Hiigel v. General Motors Corp., supra,* 544 P.2d at 988; *Hamilton v. Motor Coach Industries, Inc.,* 569 S.W.2d 571, 575 (Tex. Civ. App. 1978).

The court of appeals, in upholding the trial court's choice of instructions, concluded that it would be unreasonable to make manufacturers warn of "the effect [of] dirt in the threads or improper insertion of the screw" and unrealistic to require them to instruct maintenance personnel on fastening a screw to a nut. *Anderson v. Heron Engineering Company, supra,* 40 Colo. App. at 193, 575 P.2d at 17-18. Moreover, the court of appeals indicated that it was satisfied that "the jury found that the unit was not defective." *Id.*

In affirming the trial court's instructions and findings, the court of appeals overlooked an element that undermines those instructions and conclusions. Since inadequate warnings may render a product defective,[3] the

---

[2] *See Escola v. Coca-Cola Bottling Co.,* 24 Cal.2d 453, 150 P.2d 436, 440-44 (1944) (Traynor, J., concurring); *Hamilton v. Motor Coach Industries, Inc.,* 569 S.W.2d 571, 575, 576 (Tex. Civ. App. 1978).

[3] *Union Supply Co. v. Pust,* 196 Colo. 162, _____n.1, _____, 583 P.2d 276, 280 n.1, 283 (1978); *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983, 988 (1975).

trial judge's instructions to the jury were misleading. The trial judge should have instructed the jury to determine the adequacy of directions and warnings in deciding whether the clamp unit was defective. Heron had advised Keystone that the clamp unit must be tightened to eighty foot pounds. But since the torque could be short-circuited if the threading mechanisms were defective, dirty, or improperly inserted, and since no warning of that consequence or its dangerous sequel (slipping of the chair) was communicated to Keystone or its maintenance employees, an important jury question was not submitted to or answered by the jury. *Westerman v. Sears Roebuck & Co.*, 577 F.2d 873, 881 (5th Cir. 1978); *Union Supply Co. v. Pust, supra,* 196 Colo. at _____, 583 P.2d at 283; *Berkebile v. Brantly Helicopter Corp.*, 225 Pa. Super. 349, 311 A.2d 140, 143 (1973).

■ Heron attempts to remove the case from the shadow of *Hiigel* by arguing that it is not a "failure to warn" case. The central issue in *Hiigel,* however, was not just "failure to warn," but "failure to warn adequately." *Hiigel v. General Motors Corp., supra,* 190 Colo. at 63, 544 P.2d at 987. The issue a jury must consider is not whether the manufacturer furnished *any* instructions or warnings, but whether the instructions and warnings it did furnish were adequate.

The court of appeals also erroneously concluded that the defendant's instructions and warnings need not have been more detailed and complete. That court reasoned that the maintenance and operations manual was intended for a specialized group of maintenance workers, and since it should be apparent to such workers that the clamp would slip if not securely fastened, it would be unreasonable to require the manufacturer to warn of that danger. *Anderson v. Heron Engineering Co., supra,* 40 Colo. App. at 193, 575 P.2d at 17-18.

■ The jury might have found, however, that even an expert mechanic with that awareness would not have been able to see whether the clamp was securely fastened and would not have known how to test whether the torque was being communicated to grasp the cable or was being short-circuited. In fact, the plaintiff offered to prove through an expert witness that the maintenance employees could have tested whether the torque applied by the worker had been transmitted to the cable. The test involved simply pulling "on the clamp at the cable to determine whether or not it was tightly clamping against the cable." Plaintiff's counsel expressly directed this proof to the strict liability claim, arguing that Heron's "failure to include an instruction as to a test to determine the grip strength on the cable makes the product a defective product." Defense counsel objected, arguing that such testimony could bear only on a negligence theory, and that, since the negligence claim had already been dismissed, the evidence should not be admitted because it did not show that the product *per se* was defective. The defense objection prevailed, and the evidence was

excluded. In our view, the proferred expert testimony was clearly relevant and material on the issue of strict liability. *See Tucson Industries, Inc. v. Schwartz,* 108 Ariz. 464, 501 P.2d 936 (1972); *Midgley v. S.S. Kresge Co.,* 55 Cal.App.3d 67, 127 Cal.Rptr. 217 (3d Dist. 1976).

Moreover, although it is possible that all of the maintenance employees in Keystone's seasonal ski business were indeed experts, it is clear from the record that most of them had no experience in this particular job and might not have perceived the less than obvious problem that caused the slippage.[4]

The court of appeals, in judging by what "should have been" obvious to the employees and by what they "should have" known, overlooked the rule that assumption of risk as a defense to strict liability for failure to warn or instruct about hazards involved in product use is measured by the actual subjective knowledge of such hazards possessed by the injured claimant or, as in this case, by the purchaser and user of the product. *See, Union Supply Co. v. Pust, supra,* 196 Colo. at _____, 583 P.2d at 284.

The question of whether the danger of a mechanical malfunction was actually known to Keystone's employees is a fact question which should have been left for the jury under proper assumption of risk instructions. While a determination of what, if any, actual knowledge Keystone's employees possessed may be relevant to testing the adequacy of instructions and warnings,[5] that question could not have been adequately considered by the jury, because there were no proper instructions on the sufficiency of directions and warnings. Since Heron designed, fabricated, and distributed the clamp with a critical mechanism hidden from view, and since the plaintiff contends that Keystone employees had no way of knowing that the threads had failed to mesh inside the clamp, the conclusion is inescapable that inadequate jury instructions left an essential issue unconsidered and unresolved.

The fact that Keystone's employees intervened by disassembling and reassembling the clamp unit does not diminish any duty to warn, since a manufacturer is obligated to warn of dangers that may arise from improper use and handling. *Hiigel v. General Motors Corp., supra,* 190 Colo. at 63, 544 P.2d at 988, citing *Crane v. Sears Roebuck and*

---

[4] In *Hiigel v. General Motors Corp., supra,* note 2, the plaintiff had prior experience in wheel maintenance gained from working in his father's auto and truck repair business. We there concluded, however, that his "general knowledge . . . is not the legal equivalent of knowledge of a manufacturer's specific torque requirement." The record in the instant case indicates that only one of the employees responsible for disassembly, cleaning, and reassembly of the Heron grips had any prior experience in that work, and he was not present on some days when that work was being done.

[5] An evaluation of the Keystone employees' knowledge must consider their actual, specific knowledge of information, peculiarities, and procedures related to Heron's clamp, rather than their general knowledge of chair lifts and clamps. *Hiigel v. General Motors Corp., supra,* 190 Colo. at 64, 544 P.2d at 988.

*Company,* 218 Cal.App.2d 855, 32 Cal. Rptr. 754 (1963). Even if Keystone's employees did not misuse or mishandle the product, the duty to warn and inform adequately persists for dangers not within the maintenance workers' actual knowledge. It is at least possible that the jury might have found that the malfunction within the clamp unit was not within the workers' knowledge.

■ Heron suggests that, since it had no knowledge of any prior structural or maintenance problems with the clamp units, it should not bear any liability for the plaintiff's injury. But Heron's argument that thousands of its grips had been in use without notice to it of prior slippage injuries, introduces an element foreign to the concept of strict liability. The contention that liability should be imposed only if Heron knew or should have known of a hidden defect or concealed danger mixes "reasonableness" and "foreseeability" concepts of negligence law with precepts of strict liability. In so doing, the defendant attempts to complicate a rather simple test for strict liability of "whether the failure . . . to adequately warn of the potentially dangerous propensities of its product rendered that product unreasonably dangerous. It is of no import whether this . . . warning comported with the warning a reasonably prudent . . . manufacturer would have given." *Union Supply Co. v. Pust, supra,* 196 Colo. at _____, 583 P.2d at 283, *citing, Hamilton v. Hardy,* 37 Colo. App. 375, 549 P.2d 1099 (1976). *See Phillips v. Kimwood Machine Co.,* 269 Or. 485, 525 P.2d 1033, 1039 (1974).

A favorable reception for the argument that strict liability depends upon a manufacturer's "knowledge or reasonable imputation of knowledge" would focus attention "away from the condition of the product (strict liability) and back to the reasonableness of the manufacturer's conduct (negligence)." *Little v. PPG Industries, Inc.,* 19 Wash. App. 812, 821, 579 P.2d 940, 946 (1978). Such a result would be incongruous and incorrect, for in a strict liability case, the focus is on the product, not on the conduct or knowledge of the defendant.

■ Thus, in effect, the defendant's knowledge of a defect that renders a product unreasonably dangerous is assumed in strict liability cases. *Phillips v. Kimwood Machine Co., supra,* 269 Or. at 485-493, 525 P.2d at 1033-36; *Little v. PPG Industries, supra,* 19 Wash. App. at 822, 579 P.2d at 946. The issue for a "jury with regard to the strict liability issue is whether the manufacturer's failure to adequately warn rendered the product unreasonably dangerous without regard to the reasonableness of the failure to warn judged by negligence standards." *Hamilton v. Hardy,* 37 Colo. App. 375, 385, 549 P.2d 1099, 1108 (1976).

■ The respective rights of the plaintiff and defendant should not be dependent on confused legal principles or incomplete jury instructions. The question of whether Heron furnished sufficient instructions and

warnings was a jury question and should have been properly submitted to the jury.

Accordingly, we reverse the court of appeals and return the cause there to be remanded to the district court for a new trial.

JUSTICE ERICKSON and JUSTICE LOHR do not participate.