James W. BUTAUD, Jr., Appellant,

v.

**SUBURBAN MARINE & SPORTING GOODS, INC., Appellee.**

No. 2055.

Supreme Court of Alaska.

Dec. 5, 1975.

Lester W. Miller, Jr., and Timothy M. Lynch, of Abbott, Lynch & Farney, Anchorage, for appellant.

Daniel A. Gerety, of Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellee.

Before RABINOWITZ, C. J., and ERWIN, BOOCHEVER, and BURKE, JJ.

## OPINION

ERWIN, Justice.

This is a products liability case. The appellant purchased a new Ski-Doo 320 Olympic snow machine from Suburban in October, 1968. On February 5, 1970, while riding the snow machine, the appellant was injured. The appellant brought an action alleging that the blindness in his left eye was caused from pieces of a defective pulley guard which had shattered when struck by either a broken drive belt or debris kicked up by it.

Immediately before the accident, the appellant and his brother-in-law decided to drive their snow machines to the B & J store. While in the general area of the store on Northern Lights Boulevard in Anchorage, they discovered a small track. They were joined by an unidentified party, and the three decided to time each other driving around the track for the purpose of seeing how fast and well each could drive. During the appellant's turn, the drive belt on his snow machine broke and the pulley guard shattered when the machine was being operated as fast as it could go.

Mr. Butaud testified that prior to the accident, he had visually inspected and touched the drive belt for excessive wear and had found no signs that the belt had frayed. He also testified that he had removed the decompression button and carburetor cover, changed the belt once, and replaced some skags. From the date of purchase to the date of the accident, the snow machine had been used approximately 30 to 40 hours.

Mr. Helms testified as an expert witness that the purpose of the pulley guard which shattered was to serve as a safety feature to prevent hands and clothing from engaging the drive belt and to protect the driver when the drive belt disintegrates. Mr. Butaud similarly testified that the pulley guard served the purpose of containing the clutch and drive belt as well as protecting a person's leg or clothing from the pulleys.

Mr. Bledsoe, another expert witness, testified as to the tests he had performed on the pulley guard, one of which had revealed that the thickness measurements of parts of the pulley guard were below the manufacturer's specifications. On cross examination, it was Bledsoe's opinion that the deviation from the design thickness could have caused the pulley guard to break.

The seller contended that the legal cause of the accident was the operator's negligence in the use and care of the snow machine. In regard to maintenance of the snow machine, appellant testified on cross examination that he had read the owner's manual which stated that a drive belt less than $7/8$ inches should be discarded, and that he had not taken the machine back to the seller after each 15 hours of use for inspection as stated in the manual. The appellant also testified that the machine had not been sold to him as a racing model, but a racing conversion kit could be purchased.

Mr. LaCasse testified as an expert for the seller that the drive belt had been worn down as much as $1/8$ inch more than the minimum specified in the owner's manual for safe use, and that the drive belt had run in the pulleys upside down or inside out, which is an abnormal condition of using the belt. He also testified that a worn drive belt or excessive revolutions of the engine at top R.P.M. could have caused the

belt to turn upside down or inside out. He testified that no maintenance had been performed on the machine for a long period, and that various parts of the machine had not been greased as directed by the owner's manual.

The case was submitted to the jury, which decided in favor of the seller. This appeal followed. Initially appellant argues that the court's instruction[1] on contributory negligence necessary to defeat a products liability claim does not meet the standard set forth by this court in *Bachner v. Pearson*[2] and thus was erroneous as a matter of law. He asserts that the first paragraph of the instruction stated that any wrongdoing of the appellant was a complete bar to a recovery in strict liability, while *Bachner* requires that the appellant must have known of the defect and proceeded voluntarily and unreasonably to use the defective product before such conduct is a bar to a strict liability claim.

The appellant also argues that the evidence does not support the defense of contributory negligence, for no evidence was introduced showing that the plaintiff had any actual knowledge of the snow machine's defective pulley guard. Since the seller had the burden of establishing the plaintiff's knowledge of the defect, the instruction on contributory negligence was not appropriate.

In reply, the seller argues that the instruction is correct and that the appellant's failure to object at trial to the instruction precludes his raising it on appeal.

*Bachner* does discuss the extent to which contributory negligence is a defense to strict liability claims. It notes that strict liability attaches to the existence of a defective condition in the product rather than to the user's conduct. Although the user's conduct does not affect the validity of imposing strict liability, it may bar his recovery. The user's conscious conduct, concurring with his knowledge of the defect to cause injury to him, is a defense to strict liability. It is thus the plaintiff's awareness of the product's defective condition that has importance to the defendant. The defense of contributory negligence thus depends on proving the user's actual awareness of the product's defect and his voluntary and unreasonable encounter of the risk known to him. As we stated in *Bachner*, contributory negligence is " . . . limited to those cases where the plaintiff voluntarily and unreasonably encounters a known risk." 479 P.2d at 329–30.[3]

---

1. Instruction Number 9 reads as follows:
   Defendants claim that plaintiff was contributorily negligent, in their defense of this action. Contributory negligence, if proven, is a complete defense, and bars recovery by the plaintiff, upon the theory that one should not profit from his own wrongdoing.
   If you find, from the evidence, that the defendants sold and delivered to plaintiff a product which was defective, within the meaning of these instructions, and that such defect directly and legally caused plaintiff's injuries, it will then become your duty to determine whether the plaintiff's own negligence also contributed to his injuries.
   In order to constitute contributory negligence in a case involving sale of a product in a claimed defective condition, defendants have the burden of proving that the plaintiff unreasonably and voluntarily assumed a known risk. You must deter-
   mine whether the plaintiff knew of a risk of harm to himself, and, if so, whether he conducted himself as a reasonably prudent man would have done in the light of all the circumstances, including the appreciated risk. If you find that the plaintiff was aware of such risk and that the plaintiff acted as a reasonably prudent man in the exercise of due care, despite that knowledge, the plaintiff was not contributorily negligent. If, however, under such circumstances he did not act as a reasonably prudent man, he was contributorily negligent and may not recover against the defendants.

2. 479 P.2d 319 (Alaska 1970).

3. With respect to contributory negligence as a defense under the theory of the *Restatement (Second), Torts* § 402A, the Supreme Court of Oregon cited *Bachner* as support

In *Bachner* we concluded that the trial court correctly struck the issue of contributory negligence because there was no evidence making out a jury issue as to this defense.

In *Luque v. McClean*,[4] the California Supreme Court stated that the form of contributory negligence which bars recovery in strict liability is that which consists of a voluntary and unreasonable encounter with a known danger, commonly called assumption of risk. The defense does not arise unless the plaintiff is aware of the defect and danger and still proceeds unreasonably to make use of the product.

Therefore, in this case the trial court should not have given an instruction on contributory negligence unless there was evidence that the appellant knew of the snow machine's defective pulley guard.

■ We believe that appellee misconceives the type of evidence necessary to establish a defense to a products liability claim. Appellee strenuously argues that failing to maintain the machine, driving with a worn drive belt and racing the machine are sufficient to establish contributory negligence in the use of the product. We disagree. The defense is limited to those occasions where the use concurs with knowledge of the particular defect, not the general negligence of the user as established in this case.

■ Certainly the drive belt's condition, of which the appellant knew or should have known, was in the chain of causation. But the appellant did not know of the condition of the pulley guard; and according to some of the testimony, but for its defective condition, it would not have shattered. Since the appellee did not sustain his burden of producing any evidence of appellant's awareness of the defective pulley guard, *Bachner* requires that court instruction number 9 be stricken. Without evidence from which the jury could find contributory negligence (of the appellant), the error in giving the instruction was prejudicial. It cannot be said that the jury's verdict would not have been different had the instruction been omitted; thus a new trial is in order.

The appellant also argues that the trial court erroneously instructed the jury as to the appellant's burden of proof. The court gave instruction number 13[5] which stated that the appellant had the burden of proving that the defective pulley guard made the snow machine "unreasonably dangerous" and unsafe for its intended use before he could recover under the doctrine of strict liability.

for the kinds of conduct by the user which will bar recovery:

It is sufficient to say that, regardless of the underlying theory, we are in agreement that conduct by the user which does not amount to abnormal use of the product, or to unreasonable use with knowledge of the product's dangerous and defective condition, should not bar recovery in this type of case. *Findley v. Copeland Lumber Co.*, 265 Or. 300, 509 P.2d 28, 30 (1972). *See also DeFelice v. Ford Motor Co.*, 28 Conn.Sup. 164, 255 A.2d 636, 639 (1969).

4. 8 Cal.3d 136, 104 Cal.Rptr. 443, 501 P.2d 1163 (1972).

5. Instruction Number 13 reads in part as follows:

The defendants, retailer and distributor, are not required under the law to deliver a product which is accident-proof; however, they are subject to liability to the plaintiff for any injury suffered by him if the plaintiff establishes by a preponderance of the evidence all of the facts necessary to prove each of the following conditions:

.    .    .    .    .

Third: The plaintiff was unaware of the claimed defect;

.    .    .    .    .

Fifth: The defect, if it existed, made the product unreasonably dangerous and unsafe for its intended use.

Plaintiff has the burden of proving each of the above conditions as a basis for his recovery.

The court refused to give Appellant's Requested Instruction Number 11, which reads as follows:

A manufacturer or seller is strictly liable when an article he places on the market proves to have a defect that causes injury to a human being.

The appellant contends that the approach to strict liability in products liability cases as announced in California in *Greenman v. Yuba Power Products, Inc.* [6] was adopted for Alaska in *Clary v. Fifth Avenue Chrysler Center,* [7] rejecting the approach of section 402A of the Second Restatement of Torts which required the plaintiff to prove the product was unreasonably dangerous or unsafe before he could recover.

The appellant points out that the trial court's instruction number 13 in this case was taken from BAJI No. 9.01, but that instruction 9.01 has been disapproved and deleted [8] in California. Two recent decisions of the Supreme Court of California determine that the particular wording was in violation of *Greenman* because it required the plaintiff to prove that a defective product was "unreasonably dangerous" and that the plaintiff was not "aware" of the product's defect. [9]

Under normal circumstances we would not consider these claims of error, because it is clear from the record that appellant did not properly object to the instruction given by the trial court. [10] Additionally, appellant's proposed instructions contained both the theories of the Restatement and *Greenman.* [11] Further, his recorded objections [12] did not mention the court's failure to give proposed instruction number 11. Appellant argues that certain instructions were objected to in chambers, but we previously indicated in *Pope v. State* [13] that we would only consider errors which appear in the record. We further do not view this case as an appropriate one to review the error under the plain error doctrine, [14] for it is obvious there is a present split of legal authority on the issue.

■ However, because this issue will again arise on retrial of this case, we are inclined to indicate which doctrine should be followed in Alaska. [15] We thus announce that this court will follow the view taken by the California Supreme Court in *Greenman,* [16] *Cronin* [17] and *Luque.* [18]

The *Greenman* approach to products liability cases requires the plaintiff to prove that the product is defective and the defect is the proximate cause of the injuries. [19]

6. 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1964).

7. 454 P.2d 244 (Alaska 1969).

8. BAJI No. 9.01, Supp.1973.

9. *Cronin v. J. B. E. Olson Corp.*, 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972); *Luque v. McLean, supra* note 4.

10. Civil Rule 51(a) provides:
At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury, by excusing the jury or hearing objections in chambers.

11. R. 228–242.

12. Tr. 544.

13. 480 P.2d 697 (Alaska 1971). *See also Wyller v. Fairchild Hiller Corp.*, 503 F.2d 506, 519 (9th Cir. 1974).

14. See *Bakken v. State*, 489 P.2d 120, 127 (Alaska 1971), Erwin, J., dissenting, for a discussion of the doctrine of plain error.

15. *Ferguson v. State*, 488 P.2d 1032, 1038 (Alaska 1971).

16. Greenman, *supra* note 7.

17. Cronin, *supra* note 9.

18. Luque, *supra* note 4.

19. Greenman, *supra* note 7, 27 Cal.Rptr. at 700, 377 P.2d at 900 states:
A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.

Chief Justice Traynor concluded that liability of a manufacturer to the plaintiff for physical injury ˙ ˙s not governed by the law of contract warranty but was imposed by the law of strict liability in tort. The manufacturer implicitly represented in the marketing of its products that the product would safely perform the function for which it was built. Where the marketed product was known to be used without inspection for defects but proved to be defective, causing physical injury to the user, the manufacturer was strictly liable in tort.

In *Cronin,* the California Supreme Court opined that a plaintiff seeking recovery based on strict liability in tort need not prove that the defect made the product "unreasonably dangerous" to the user or consumer. The court stated that having to prove the element of "unreasonably dangerous" as required by the Restatement places an added burden on the plaintiff not consonant with *Greenman.*

Having the plaintiff prove not only that the product contained a defect, but also that the defect made the product "unreasonably dangerous," would place a heavier burden on the plaintiff than that articulated in *Greenman.* It represents a step backwards in the development of products liability cases. The purpose of strict liability is to overcome the difficulty of proof inherent in negligent and warranty theories, thereby insuring that the costs of physical injuries are borne by those who market defective products.

In *Luque,* the court held that the plaintiff does not have to prove he was not "aware" of the product's defect. Prior to *Luque,* it was unclear whether *Greenman* required proof of the plaintiff's unawareness. The confusion centered on two statements in *Greenman* referred to in *Luque* as the first and second excerpt:

A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.[20]

and

To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was *not aware* that made the Shopsmith unsafe for its intended use. [Emphasis added][21]

The court concluded that the instruction was erroneous since it was based not on the first but on the second *Greenman* excerpt. The first *Greenman* excerpt is the formulation of the elements of a cause of action under the strict liability rule. The second excerpt goes to the issue of defense to bar the plaintiff's recovery: the plaintiff must not have unreasonably assumed the risk of the defective product.[22] The effect of having the plaintiff prove that he had not proceeded to encounter the risk of a defective product is to misplace the burden of establishing such a defense upon the plaintiff when it belongs on the defendant.

We conclude that the policy decisions made by this court in *Bachner* are better served by the *Greenman-Cronin-Luque* line of cases. On retrial this view should be followed by the trial court.

The verdict of the jury is reversed, and this case is remanded for a new trial. However, one issue must be resolved before such a trial can actually be held. This issue is the effect of the doctrine of comparative negligence on products liability cases such as this. Since this issue is

---

20. 27 Cal.Rptr. at 700, 377 P.2d at 900.

21. 27 Cal.Rptr. at 701, 377 P.2d at 901.

22. *Bachner v. Pearson, supra* at 330, note 24. We wish to stress that the defense of

assumption of the risk was abolished in *Leavitt v. Gillaspie,* 443 P.2d 61 (Alaska 1968), and nothing herein is intended to revive it except in the limited context as described in products liability cases.

new to this case because of the recent adoption of the doctrine of comparative negligence in Alaska, additional briefing will be required to resolve this issue for the purposes of retrial.[23]

---

23. The court will order further briefing on this issue but has decided not to withhold its decision because of the need to resolve now the issues presented herein. This case can be scheduled for retrial by the superior court while awaiting decision on the remaining issue, thus avoiding substantial delays.