ROVIRA, Justice, concurring in part and dissenting in part:

I dissent as to Part I of the majority opinion.

The instruction approved in *People v. Thomson,* Colo., 591 P.2d 1031 (1979), as to what would happen to the defendant if he were found not guilty by reason of insanity was characterized as an "informational instruction," and the jury was further advised that it was to "have no persuasive bearing on the verdict you arrive at under the evidence."

In *Adams v. Illinois,* 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1973), relied upon by the majority to establish the standards or test by which retroactivity was to be measured, the United States Supreme Court concluded that, although assistance of counsel at a preliminary hearing was constitutionally mandated (*Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970)), such constitutional doctrine would not be applied retroactively. *See also Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), where retroactive effect was not given to the requirement of counsel at a pretrial lineup or at an interrogation conducted without the presence of an attorney. The majority, by giving retroactive effect to this instruction, has elevated it to the level of new constitutional doctrines such as the right to counsel at trial, and on appeal, both of which were given retroactive effect. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

I do not accept the view expressed by the majority that failure to give retroactivity to this informational and nonpersuasive instruction impairs the truth-finding function of the trial and thereby raises serious questions about the accuracy of the verdict.

Jack D. FRAZIER, Plaintiff-Appellee,

v.

KYSOR INDUSTRIAL CORP., a Delaware Corporation, Defendant-Appellant and Cross-Appellant,

and

Duboc-Lane & Monckton, Inc., a Colorado Corporation, Defendant-Appellant and Cross-Appellee.

No. 78–082.

Colorado Court of Appeals, Div. II.

Oct. 25, 1979.

Rehearing Denied Nov. 29, 1979.

Certiorari Granted March 10, 1980.

Frank Plaut, P.C., Evan S. Lipstein, Lakewood, for plaintiff-appellee.

Kenneth C. Groves, Denver, for defendant-appellant and cross-appellant.

Littell, Everstine & Dickinson, Gilbert A. Dickinson, Denver, for defendant-appellant and cross-appellee.

ENOCH, Judge.

In this strict liability tort case, defendants Kysor Industrial Corp. (Kysor) and Duboc-Lane & Monckton, Inc. (DLM), appeal from a judgment entered on a jury verdict in favor of plaintiff. Kysor also appeals from a trial court judgment that it is liable to indemnify DLM, and DLM appeals from a separate decision of the trial court that it was not a statutory employer of plaintiff. We affirm.

Kysor is the manufacturer of a four-ton transverse plate saw; DLM is the Denver distributor of the saw. In 1976 DLM contacted Duffy Moving and Storage Company (Duffy) to move the saw from DLM's warehouse to the premises of the purchaser, Esco. Esco made payment directly to Duffy for this move. Kysor issued no lifting instructions nor any warning of danger that could result from handling the saw. Plaintiff, employee of Duffy and foreman of the moving crew, decided to use a forklift to unload the saw at its destination. While the saw was still suspended on the forklift just above the ground level, plaintiff began removing the wooden skids from the base of the saw. The saw then slipped from the forklift and fell on plaintiff, causing extensive injuries. Plaintiff sued defendants, alleging strict liability in tort for failure to provide warning instructions that the proper and safe method of moving the saw was by use of a crane.

## I.

Defendants first contend that this case is not appropriate for the application of the principles of strict liability in tort as expressed in *Restatement (Second) of Torts* § 402A. Instead they argue that, as a matter of law, Kysor was under no duty to warn of the proper method of moving the saw because plaintiff was an expert in the field of moving heavy equipment. We disagree.

In *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975), the Colorado Supreme Court expressly adopted the provisions of *Restatement (Second) of Torts* § 402A, which states:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) The seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

A product may be defective for purposes of § 402A if the manufacturer does not give

sufficient warnings of dangers inherent in the use of the product. *Union Supply Co. v. Pust*, Colo., 583 P.2d 276 (1978); *Hiigel v. General Motors Corp., supra. See also* 1 L. Frumer & M. Freidman, *Products Liability* § 8.05[1]. Such failure to warn may thus make the product unreasonably dangerous to the ordinary user and result in strict liability to the manufacturer and distributor.

The fact that plaintiff was an expert in moving heavy equipment does not preclude a finding of a defectively dangerous product due to a failure to instruct as to the safe and proper method of moving the saw. Whether a product is in a "defective condition, unreasonably dangerous" to a user or consumer because of the manufacturer's failure to warn is an issue for the jury. *Anderson v. Heron*, Colo., 604 P.2d 674 (annc'd 1979); *Union Supply Co. v. Pust, supra.* Adequacy of the warning, or the requirement that one be given at all, is determined by taking into consideration the likelihood of accident and the seriousness of the consequences of failure to warn. *Hiigel v. General Motors, supra. See also Union Supply Co. v. Pust, supra.* Thus the jury is required to focus on the nature of the product, not the conduct of the manufacturer or the expertise of the plaintiff, to determine if the product is defective without a warning or with an inadequate warning. *Anderson, supra.*

In this case, there was sufficient evidence for the jury to find a failure of adequate instruction, thereby creating a "defective condition unreasonably dangerous" to the user or consumer. *See Anderson, supra; Union Supply Co. v. Pust, supra.* The distributor, DLM, ordered a crane for the loading. Plaintiff's superintendent testified that he knew the crane was ordered and that a forklift was to be used for the unloading at Esco. Prior to the loading, personnel at DLM demonstrated how to rig the crane. Later, at the time of the unloading, when plaintiff looked on the saw for instructions, he found none; thus he undertook the unloading with the forklift. He testified that nothing had been said by

manufacturer or distributor of the inherent and specific dangers of not actually using a crane. *See Hiigel, supra.* Thus, there was a factual basis for submitting the case to the jury under § 402A and for the jury finding of liability. *Cf. Baird v. Power Rental Equipment, Inc.*, 191 Colo. 319, 552 P.2d 494 (1976). (Absent factual basis, reviewing court could not find defect by reason of lack of warning.)

When defendants argue that they rely on the expertise of movers, and that it would be unrealistic to require warnings to such experts, they reason along the lines of negligence owing to general knowledge and experience of the expert. But the Supreme Court has rejected application of a "should-have-known-standard" by adopting § 402A. "The measurement must be according to whatever relevant knowledge and understanding the plaintiff (actually) possessed." *Hiigel, supra* at 64, 544 P.2d at 988; *Anderson, supra.* Defendants' argument also has the implication of the "open and obvious" doctrine, that since the dangers of the moving process are apparent to movers, no warning was necessary. This also has been rejected. *Union Supply Co. v. Pust, supra. See also Bookout v. Victor Comptometer Corp.*, 40 Colo.App. 417, 576 P.2d 197 (1978). (Pierce, J., concurring).

We also disagree with defendants' contention that because plaintiff was moving the saw, and therefore was not actually putting it to its intended use, he was not an "ultimate user or consumer" within the meaning of § 402A. The policy underlying strict liability in tort is designed to place the risk of foreseeable injury caused by a defective product on the manufacturer which has put the product into the stream of commerce. *Hiigel, supra; Anderson, supra.* The far-reaching goal of this policy has led to a broad interpretation of "ultimate user or consumer" which encompasses not only persons actually using or consuming the finished product but also persons who use the defective product in a foreseeable yet unorthodox manner and bystanders who are affected when someone else uses the product. *Restatement (Second) of*

Torts § 402A, Comment 1. *See 2 L. Frumer & M. Freidman, Products Liability* § 16A[4][C] and [d]. Colorado has never directly defined the range of persons protected under § 402A. Other jurisdictions, however, have extended the protection to persons injured while performing foreseeable repairs on the finished product, *Carpenter v. Koehring Co.*, 391 F.Supp. 206 (E.D. Pa.1975), *aff'd*, 527 F.2d 644 (3d Cir. 1976), and to "industrial/commercial specialists" injured while working on a defective product. *Potsdam Welding & Machine Co. v. Neptune Microflac, Inc.*, 57 A.D.2d 993, 394 N.Y.S.2d 744 (1977). In those cases where a person is denied a strict liability cause of action, the courts tend to look not to the activity which caused him to be affected by the product, but instead to the fact that the product was not in finished form and not yet in the stream of commerce. *See Genaust v. Illinois Power Co.*, 62 Ill.2d 456, 343 N.E.2d 465 (1976); *Spellmeyer v. Weyerhauser Corp.*, 14 Wash.App. 642, 544 P.2d 107 (1975).

■ When applied to this case, the basic reasons and principles stated in *Anderson, supra*, for the imposition of strict liability, require the conclusion that plaintiff would be entitled to pursue this theory of relief whether he was an employee of the user or an employee of a subcontractor paid by the user to move the product into operating position. Thus, we hold that if a finished product which is unreasonably dangerous without a warning is placed into the stream of commerce, then the manufacturer doing so bears the risk of liability to those who foreseeably may be injured along the path of delivery. Therefore, a mover is a "consumer" of the product within the meaning of § 402A, and the court was correct in allowing plaintiff to maintain his cause of action based on strict liability in tort.

## II.

Defendants next assign error to several of the court's rulings on the admissibility of evidence. We find no reversible error.

■ Defendants first argue that the trial court erred in allowing experts to testify for plaintiff when plaintiff was himself an expert mover. Rulings on the qualification of an expert witness and the admission of opinion evidence by an expert witness are within the discretion of the trial court. *Pueblo v. Ratliff*, 137 Colo. 468, 327 P.2d 270 (1958). *See also Baird v. Power Rental Equipment, Inc.*, 191 Colo. 319, 552 P.2d 494 (1976). We find no abuse of discretion in the court's ruling that an engineer with knowledge of mechanics and dynamics and with experience in planning the movement of heavy equipment could testify as to the interplay of forces involved in the movement of the saw. *See also Anderson, supra* (Expert testimony directed to proof of a strict liability claim should have been admitted.)

■ Similarly there was no abuse of discretion in allowing plaintiff's doctor to testify as to the opinion he reached based on his own examination of plaintiff and after having consulted with another physician concerning the cause of plaintiff's arm weakness. Any hearsay objection defendants may have had regarding that statement was waived when they failed to raise the hearsay objection before the trial court. *See Russell v. First American Mortgage Co.*, 39 Colo.App. 360, 565 P.2d 972 (1977).

■ We also disagree with defendants' argument that the court should not have allowed in evidence a picture of a cooling tower and the testimony of a witness for plaintiff as to instructions provided by the manufacturer for moving the tower. The cooling tower, like the saw, was large, bulky, and uncrated, presenting many of the same moving problems as the saw and tending to show the feasibility of providing instructions in the movement of such objects. The picture and the testimony therefore did not describe a situation so dissimilar as to bar the admission of the evidence.

■ Contrary to defendants' next objection, the trial court did not err in excluding "state of the art" testimony by a non-lawyer that no statutes or regulations existed at the time of the incident governing the manufacturer's duty to warn. The court

was correct in determining that the witness was not qualified as an expert.

We find no merit in defendants' assertion that the case should be remanded for new trial because evidence of standard of care was admitted and the case was thereafter submitted to the jury only on a strict liability theory. The court need not grant a new trial when evidence admissible under plaintiff's several causes of action would be inadmissible after all but one cause of action is dismissed, so long as the jury is properly instructed as to the remaining cause of action. *Cf. Professional Rodeo Cowboys Ass'n, Inc. v. Wilch, Smith & Brock*, Colo.App., 589 P.2d 510 (1978). Here there was no error because the jury was thoroughly instructed as to the strict liability cause of action.

We also find no merit in defendants' contention that the court erred in instructing the jury on future loss of wages. Contrary to defendants' argument, there was sufficient evidence in the record to support the instruction.

Finally, defendants argue that the court erred in excluding testimony on redirect examination to rehabilitate one of defendants' expert medical witnesses. The testimony offered was further evidence of his recent practical experience in medicine. The extent to which a trial court permits redirect examination of an expert, who has already been qualified as an expert, as to matters which relate only to his qualifications is within its sound discretion. *Cf. Denver Symphony Ass'n v. Industrial Commission*, 34 Colo.App. 343, 526 P.2d 685 (1974).

### III.

Kysor contends that the court erred in granting DLM's cross-claim for indemnity against Kysor and in dismissing its cross-claim against DLM for indemnity. This issue was tried separately to the court after the jury returned its verdict on the other issues. We find no error.

Kysor's argument is that DLM owed a duty to both Kysor and plaintiff to instruct plaintiff in the proper method of moving the saw. According to Kysor, DLM's failure to give such warning and its role in contracting· with Duffy constituted active negligence as opposed to Kysor's passive negligence, such that Kysor is entitled to indemnity.

Contrary to Kysor's argument, however, any distinction between passive and active negligence has no application in a strict liability indemnity action. Instead, under Colorado law, a manufacturer may be held liable to others in the chain of distribution without regard to fault.[1] *Good v. A. B. Chance Co.*, 39 Colo.App. 70, 565 P.2d 217 (1977). *See also* 2 L. Frumer & M. Freidman, *Products Liability* § 16A[4][b][i]. Here, the trial court found, based on evidence, that Kysor issued no instructions or warnings to DLM regarding the proper method of moving the saw. Thus, there is no issue here whether Kysor delegated to DLM its duty to warn. *See Good v. A. B. Chance Co., supra.* There being no evidence that Kysor should not be liable to indemnify DLM, it was not error for the court to allow DLM indemnity against Kysor and to dismiss Kysor's cross-claim.

### IV.

DLM contends that the court erred in failing to rule as a matter of law that DLM was a statutory or constructive employer pursuant to § 8–48–101, C.R.S.1973 (1978 Cum.Supp.), and was therefore immune from suit by plaintiff. We disagree.

Section 8–48–101(1), C.R.S.1973, provides in part that anyone who conducts any business by contracting any part of the work to a contractor or subcontractor shall be construed to be an employer, making him liable to pay workmen's compensation for injury or death resulting from the work to the contractors and subcontractors. Subsection

---

1. This action arose before the enactment of § 13–21–402(1), C.R.S.1973 (1978 Cum.Supp.), which provides sellers who are not manufactur-

ers a general exemption from strict liability claims.

(2) limits the liability of statutory employers who have workmen's compensation coverage and provides then immunity from tort actions. Thus, if DLM were a statutory employer under the facts of this case, plaintiff's strict liability claim against DLM would be barred by the statute.

The purpose of the statute is to prevent employers from evading coverage by contracting out their work instead of directly hiring workmen. *San Isabel Electric Ass'n, Inc. v. Bramer*, 182 Colo. 15, 510 P.2d 438 (1973). The test to determine whether a person qualifies as a statutory employer is whether the work contracted out was part of the regular business of the constructive employer such that he would normally accomplish it with his own employees. *San Isabel Electric Ass'n, Inc. v. Bramer, supra; Pioneer Construction Co. v. Davis*, 152 Colo. 121, 381 P.2d 22 (1963). *See generally* 1B *A. Larson, Workmen's Compensation Law* § 49.12.

Here, the essential evidence is undisputed. Esco, the purchaser of the saw, contracted with DLM for the purchase of the saw "F.O.B.: Manlius, New York." Under normal circumstances, the saw would have been sent directly to Esco from the Kysor warehouse. In this case, however, the saw was ordered before Esco was prepared to accept delivery, so DLM stored the saw in its warehouse for the convenience of Esco. DLM contacted Duffy to move the saw from its warehouse, but it was Esco who paid for Duffy's services. Testimony for DLM indicated that although DLM does deliver smaller equipment to purchasers, it does not have the machinery or expertise to move heavy items such as a transverse plate saw because the need for these services is rare.

Given the nature of DLM's business, the terms of its contract with Esco, and the fact that DLM had no history of moving such large equipment itself, we find that the court was correct in determining that the moving of the transverse plate saw was not within the normal business activity contemplated by the statute. Nor does the evidence show such an "intimate and extensive participation" in the contract that this particular transaction became part of DLM's business by virtue of its conduct with regard to the transaction. *Cf. Gardner Motor Co. v. Feistel*, 160 Colo. 135, 414 P.2d 915 (1966). (Distributor contracted with purchaser to deliver the goods into the hands of purchasers.) Generally it is a question of fact whether a person is a statutory employer. *Kalmon v. Industrial Commission*, Colo.App., 583 P.2d 946 (1978). Here, however, the evidence was such that reasonable people could not find that DLM was a statutory employer. Therefore, it was not error for the court to rule as a matter of law that the statutory employer defense was unavailable to shield DLM from tort liability.

We have considered defendants' other allegations of error and find them to be without merit.

Judgment affirmed.

PIERCE and SMITH, JJ., concur.