KYSOR INDUSTRIAL CORP., a Delaware corporation; Duboc-Lane & Monckton, Inc., a Colorado corporation, Petitioners,

v.

Jack D. FRAZIER, Respondent.

No. 79SC371.

Supreme Court of Colorado,
En Banc.

March 8, 1982.

Rehearings Denied March 29, 1982.

Opinion Modified, and as Modified, Petitions for Rehearing Denied March 29, 1982.

Kenneth C. Groves, Denver, for petitioner, Kysor Indus. Corp. and Colorado Defense Lawyers Ass'n, amicus curiae.

Littell & Dickinson, Gilbert A. Dickinson, Denver, for petitioner, Duboc-Lane & Monckton, Inc.

Plaut & Lipstein, Evan S. Lipstein, Lakewood, for respondent.

Joel H. Greenstein, William A. Trine, Boulder, for Colo. Trial Lawyers Ass'n, amicus curiae.

ERICKSON, Justice.

We granted certiorari to review the decision of the court of appeals in *Frazier v. Kysor Industrial Corp.*, 43 Colo.App. 287, 607 P.2d 1296 (1979), which affirmed a jury verdict for the plaintiff and an award of damages on a theory of strict liability for failure to warn under section 402A of the Restatement (Second) of Torts. We reverse and return to the court of appeals with directions to remand to the district court for entry of judgment in favor of the defendants, Kysor Industrial Corporation and Duboc-Lane & Monckton, Inc.

I.

Petitioners, Kysor Industrial Corporation (Kysor) and Duboc-Lane & Monckton, Inc. (DLM), are the manufacturer and distributor, respectively, of a four ton traverse plate saw which was purchased by Esco Corporation (Esco). Generally, Kysor ships such saws directly to the purchaser, but the particular saw purchased by Esco was shipped to DLM for storage until Esco could finish the warehouse in which the saw would be used. The saw was prepared for shipment by using lag screws to bolt the legs of the saw to a wooden skid underneath the superstructure of the saw. The skid weighed 600–700 pounds. In addition, certain parts of the saw were disassembled and strapped to the skid in preparation for shipment. No written instructions were provided by Kysor regarding the proper method for lifting and moving the saw or for removing the wooden skid during the shipment process.

The saw arrived in Denver on January 26, 1976. Since DLM had neither lifting equipment nor trucks large enough to move the saw, Duffy Storage & Moving Company (Duffy) entered into a contract to move the saw into DLM's warehouse. Using a hydrocrane, Duffy moved the saw without incident. On February 16, 1976, Esco and DLM made arrangements with Duffy to transport the saw from the DLM warehouse facility to Esco. Respondent Frazier, a foreman employed by Duffy, was responsible for the moving operation. At the DLM warehouse, Frazier was shown how to rig the saw in order to lift it with a crane. He then loaded the saw onto a truck, without mishap, with a hydrocrane. Since Frazier had been advised that a forklift was available at Esco for unloading purposes, he or-

dered the crane to be returned to Duffy's yard after the loading operation was completed. Neither Kysor nor DLM knew that a forklift would be used at Esco for unloading purposes; the work order showed only that a hydrocrane had been ordered for the moving operation.

After arriving at Esco, Frazier picked up the saw from the low-boy trailer by maneuvering the forklift under the lowest horizontal member of the saw. He determined the center of gravity of the saw, and then safely and successfully moved it into Esco's warehouse. Pursuant to Esco's directions, Frazier placed the saw at the spot in Esco's warehouse where it was to be set up for operation. He then lowered the forklift to a point where he thought the saw and the attached skid were on the ground. In fact, the saw and attached skid were not lowered to the ground, but were actually suspended by the forklift about two to three inches above the ground. Frazier's co-workers then began to remove the lag screws from the top of one side of the skid, and Frazier bent over to cut the steel bands which held the disassembled parts of the saw to the skid. As the skid was removed, the center of gravity of the saw shifted, causing the saw to become unstable. As the skid fell to the floor, the saw rocked back and forth on the forklift and then overturned onto Frazier. As a result of the accident, Frazier suffered a large hemorrhage in his back and a sprain in the cervical region of his neck.

Frazier filed a complaint against Kysor and DLM seeking recovery on three theories: (1) negligence; (2) breach of implied warranty; and (3) strict liability in tort for failure to provide warnings or instructions concerning the proper methods of lifting and moving the saw and removing the skid therefrom. *Restatement (Second) Torts* § 402A (1965) (section 402A). Frazier subsequently withdrew his claims of negligence and breach of warranty. On November 21, 1977, the jury returned a verdict in favor of Frazier on a theory of strict liability for failure to warn under section 402A, and awarded damages in the sum of $75,000. Judgment was entered accordingly, and Kysor and DLM thereafter appealed to the court of appeals.

The court of appeals affirmed the judgment of the trial court and concluded that: (1) the application of a section 402A theory of recovery to the facts of this case was appropriate; (2) there was sufficient evidence for the jury to find a failure of adequate instruction, thereby creating an unreasonably dangerous defective condition; (3) the plaintiff was a "user or consumer" within the meaning of section 402A; and (4) no reversible error existed in the trial court's rulings on the admissibility of certain evidence. *Frazier v. Kysor Industrial Corp.*, 43 Colo.App. 287, 607 P.2d 1296 (1979). We granted certiorari and, for the reasons set forth in this opinion, we reverse the court of appeals.

## II.

In *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975), we expressly adopted the doctrine of strict liability in tort under section 402A, which provides;

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Under section 402A, a product may be considered to be in a "defective condition unreasonably dangerous" to the user or consumer, even though faultlessly made, if the manufacturer or supplier placed the product into the stream of commerce without

giving suitable and adequate warnings or instructions concerning the safe and proper manner in which to use it. *See, e.g., Anderson v. Heron Engineering Company, Inc.,* 198 Colo. 391, 604 P.2d 674 (1979); *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978); *Hiigel v. General Motors Corp., supra. See also Restatement (Second) Torts* § 402A, Comment j, at 353 (1965).

Kysor argues, *inter alia,* that it was not under a duty to warn because Frazier created the unsafe condition of the saw through subsequent mishandling after Kysor had delivered the saw to DLM in a safe condition. In Kysor's view, the question of whether a duty to warn existed should be determined, as a matter of law, favorably to Kysor's interests, and a claim for recovery for failure to warn under section 402A should not have been submitted to the jury. The requirement that warnings or instructions be given is determined by taking into consideration the likelihood of accident and the seriousness of the consequences of failing to warn. *Hiigel v. General Motors Corp., supra.* Because we can find no evidence in the record showing that, under the circumstances, the saw and attached skid were in a defective condition because of a lack of warning, we conclude that a claim for recovery under section 402A was erroneously submitted to the jury.

■ A manufacturer's strict liability in tort does not rest upon the normal negligence rules, but upon the concept of enterprise liability for casting a defective product into the stream of commerce. *Hiigel v. General Motors Corp., supra.* Therefore, under section 402A, the crucial issue is the condition of the product which determines whether a product is defective and unreasonably dangerous without a warning or instructions. *See Anderson v. Heron Engineering Company, Inc., supra.*

■ However, the fact that, under certain circumstances, an accident may occur in connection with the use of a product does not necessarily make the product defective and unreasonably dangerous without a warning. Strict liability is not the equivalent of absolute liability. Because the law does not require a manufacturer to be the virtual insurer of its products, the scope of liability under section 402A is limited.

■ In *Union Supply Co. v. Pust, supra,* we held that a plaintiff must prove that a product was both "defective" and "unreasonably dangerous" in order to sustain a cause of action in strict liability under section 402A.[1] We agree with the court of appeals that the fact that the plaintiff was an expert in moving heavy equipment does not preclude a finding of a defective and unreasonably dangerous product due to a failure to warn or instruct as to the safe and proper method of moving the saw. However, because proof of a defective condition is required, a plaintiff cannot rely upon section 402A to recover for his own misuse in the creation of a danger which causes injury when the product was free of danger and not defective before his contact with it. Comment g to section 402A provides in pertinent part:

> "The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained." *Restatement (Second) Torts* § 402A, Comment g, at 351 (1965).

*See also Bradford v. Bendix-Westinghouse Automotive Air Brake Co.,* 33 Colo.App. 99, 517 P.2d 406 (1973). Accordingly, we hold

---

1. Some courts, however, have eliminated the "unreasonably dangerous" requirement because it introduces negligence language into a strict liability cause of action. *See, e.g., Butaud v. Suburban Marine & Sporting Goods, Inc.,* 543 P.2d 209 (Alaska 1975); *Berkebile v.*

*Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975); *Cronin v. J.B.E. Olson Corp.,* 8 Cal.3d 121, 501 P.2d 1153, 104 Cal.Rptr. 433 (1972). *See also Barker v. Lull Engineering Co., Inc.,* 20 Cal.3d 413, 573 P.2d 443, 143 Cal.Rptr. 225 (1978).

that a duty to warn or instruct does not occur where a product's dangerous condition is created solely by the plaintiff's own mishandling or misuse.[2]

The record establishes that Frazier created the dangerous condition which resulted in his injury by his own inadvertence and mishandling. Although the testimony at trial indicated that the location of the center of gravity of the saw was deceiving and that it was possible to lift it in a manner in which it would be unstable, neither situation occurred in this case. Rather, Frazier's testimony was that, because of the open configuration of the saw, he was able to determine its center of gravity at the time he lifted it with the forklift so that no imbalance or instability resulted. Consequently, Frazier was able to lift and move the saw off the truck and into Esco's warehouse without mishap.

Moreover, Frazier testified that he was sure he had lowered the saw all the way to the ground before he attempted to remove the skid, although he did not check to see if the forklift or the skid was indeed touching the floor. Frazier knew that, if the skid was removed while the saw was elevated, the center of gravity of the saw would change and it would become unstable; he admitted that such an elementary principle of physics was a matter of common sense. In retrospect, Frazier recognized that the saw was not lowered to the ground when he began to remove the skid and that, if it had been, the accident would not have occurred.

No evidence was presented which connected Frazier's injury to a defect because of any patent or latent instability of the saw or the attached skid. To the contrary, the accident happened solely because Frazier created an unstable condition by attempting to remove the heavy skid while the saw was suspended in the air by the forklift. Thus, the factors causing the accident were separable from the product itself.[3] Moreover, nothing in the record indicates that the saw could not be safely moved with a forklift or that it is *ipso facto* unsafe to move it by any means other than a crane. The facts of this case persuasively show otherwise. The saw was exposed and contained no hidden peculiarities with respect to its weight distribution. By its very nature, it could be moved by a variety of methods including, as in this case, a forklift. Therefore, no specific warnings or instructions regarding the lifting or moving the saw could logically have been given. We cannot impose a requirement that Kysor must warn about the general effects of instability and the change of the center of gravity when an elevated saw has a heavy skid removed from one side.

We recognize that the question of whether a product is in a "defective condition unreasonably dangerous" because of a manufacturer's failure to warn is normally

---

2. The rationale for limiting manufacturer liability under the facts of this case is similar to that set forth by those jurisdictions which have precluded a duty to warn, for strict liability purposes, where the existence of a dangerous condition is generally known and recognized. *See, e.g., McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155 (8th Cir. 1978) (a chair will tip if the seated person leans too far forward); *Hensley v. Muskin Corp.*, 65 Mich.App. 662, 238 N.W.2d 362 (1975) (diving from a 7-foot high garage into a 4-foot deep pool is dangerous); *Fanning v. LeMay*, 38 Ill.2d 209, 230 N.E.2d 182 (1967) (shoes tend to become slippery when wet). *See generally Union Supply v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978). *See also Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975); *Restatement (Second) Torts* § 402A, Comments i, j, and n, at 352–56 (1965).

3. At this juncture, we must distinguish the facts of this case from one where a plaintiff has been injured due to a dangerous condition of a product resulting from the manufacturer's failure to warn, and where the plaintiff has also been contributorily negligent. In *Union Supply v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978), we held that ordinary contributory negligence, consisting of a failure to exercise due care to discover a defect or to guard against its possible existence, is not a defense to strict liability. *See also Restatement (Second) Torts* § 402A, Comment n, at 356 (1965). Here, the record establishes that Frazier's injury resulted from his creation of an unstable condition through his mishandling of the forklift and the saw, and was not the result of Kysor's failure to warn of a dangerous condition of the saw. Hence, we are not faced with the issue of contributory negligence which confronted us in *Union Supply Co. v. Pust, supra.*

an issue for the jury. *See Anderson v. Heron Engineering Company, Inc.,* 198 Colo. 391, 604 P.2d 674 (1979); *Union Supply v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978). However, the necessity or adequacy of warnings in determining the existence of a defect must be considered with a view to all the evidence. We find no evidence in the record to support a finding that the saw or the attached skid were in a defective condition because of a lack of warning before Frazier created the unstable condition which resulted in his injury. Thus, there was no factual basis for submitting the case to the jury under a theory of strict liability. *See Baird v. Power Rental,* 191 Colo. 319, 552 P.2d 494 (1976). *See also Restatement (Second) Torts* § 402A, Comment g, at 351 (1965).

We therefore conclude that Frazier's claim for recovery under section 402A was erroneously submitted to the jury. Because of our decision, we need not address the remaining issues before us on certiorari.

Accordingly, we reverse the judgment of the court of appeals and return the case to the court of appeals with directions to remand to the district court for entry of judgment in favor of Kysor Industrial Corporation and Duboc-Lane & Monckton, Inc.

ROVIRA, J., specially concurs.

DUBOFSKY, LOHR and QUINN, JJ., dissent.

ROVIRA, Justice, specially concurring:

A basic issue not discussed in the majority opinion is whether the respondent was a user or consumer within the meaning of § 402A and therefore entitled to maintain an action based on strict liability.

The court of appeals in *Frazier v. Kysor Industrial Corp.,* 43 Colo.App. 287, 607 P.2d 1296 (1979), held that a mover, such as respondent, was a consumer within the meaning of § 402A because he was a person who foreseeably might be injured along the path of delivery and therefore was entitled to maintain an action based on strict liability.

I agree with the majority that because we reverse on other grounds there is no need to address the "user or consumer" issue. However, in my opinion, the issue is very much alive, and the formulation by the court of appeals should be carefully considered and reviewed in light of the policy considerations inherent in the adoption of § 402A.

DUBOFSKY, Justice, dissenting:

I respectfully dissent.

The rule enunciated in prior cases is that whether a product is in a defective condition unreasonably dangerous to a user or consumer because of the manufacturer's failure to warn is an issue for the jury. *Anderson v. Heron Engineering Company, Inc.,* 198 Colo. 391, 604 P.2d 674 (1979); *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978). The adequacy of the warning given, or the requirement that one be given at all, is determined by considering the nature of the product, the likelihood of accident and the seriousness of the consequences of a failure to warn. *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975). These, too, are questions of fact for the jury. *See Anderson v. Heron Engineering Company, Inc., supra.*

The majority concludes that there is no evidence in the record here showing that the saw and attached skid were in a defective condition because of a failure to warn, and therefore, there was no factual basis for submitting the case to the jury under a theory of strict liability. My reading of the record leads me to a different conclusion.

The saw which injured the plaintiff was sixteen feet long, seven feet high, and weighed over seven thousand pounds. A wooden skid with roller tables strapped to it was attached to the saw's feet. The foreman for the defendant manufacturer testified that the weight of the machine, skid, and roller tables was about nine thousand pounds. An expert witness for the plaintiff testified that most of the saw's surface area above its center of gravity was covered with sheet metal, and that the saw's appearance of stability was deceiving. The

plaintiff lifted the saw with a forklift placed under the lowest horizontal beam of the saw. Expert testimony indicated that the saw's center of gravity was probably below the lift point as long as the skid remained attached. When the skid was removed, however, the center of gravity shifted upward, and the remaining mass on the lift became unstable. The expert testified that even had the plaintiff lowered the saw and skid to the floor before attempting to remove the skid, the skid could not have been taken from the saw without lifting the saw by itself, and that the saw alone could not have been lifted in a stable manner with the forklift under the lower beam.

The truck superintendent for Duffy's testified that in many years with the company he had seen numerous large, open, uncrated machines, the majority of which had instructions or warnings about hoisting, moving, slinging or lifting. He stated that he would have loaded this saw with a forklift as the plaintiff did unless he was told otherwise by the manufacturer because the saw looked stable.

The general foreman at Kysor Corporation's plant where the saw was made testified that this saw was moved within the plant by an overhead crane attached to the saw with three chains, two attached around the columns that held the upper beam along which the cutting head travels, and the other, a steadying chain, attached to the lower horizontal beam. The crane also was used to load the saw on a truck for shipment.

When the plaintiff's attorney questioned the Kysor foreman, the following colloquy ensued:

Q. "Do you believe that the use of a crane is a proper way to lift the ST 1500 [the saw]?"

A. "Definitely."

Q. "In fact, it's your belief, isn't it, that it's the only proper way to lift it, is that right?"

A. "Yes."

The same witness testified that while a crane was not essential for movement of the saw, if a forklift were used, the saw should be suspended from the forklift in a sling position, using the same lift points as those used for movement of the saw in the factory.

Finally, the plaintiff testified that he would have followed lifting instructions had there been any. He also testified that he had no difficulty moving the saw with a crane or moving it with a forklift while the skid was attached. His testimony was consistent with what the other witnesses said he should have expected. When he lowered the forklift to remove the skid, his two helpers began to work at one end of the saw. The plaintiff went to the center of the saw to cut the bands holding the spare pieces. He heard a crash, and the machine tipped forward onto him.

The existence of an unreasonably dangerous defect is a question of fact. It is a general rule of law that factual determinations made upon conflicting evidence are not set aside on appeal. As we stated in *Peterson v. Ground Water Commission*, 195 Colo. 508, 579 P.2d 629 (1978),

The sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom, will not be disturbed unless so clearly erroneous as to find no support in the record.

Similarly, we said in *Vigil v. Pine*, 176 Colo. 384, 490 P.2d 934 (1971),

Colorado appellate courts are bound by the jury's findings where there is sufficient competent evidence in the record to support the finding, where the jury makes the finding on conflicting evidence, and where the jury has been correctly instructed by the trial court.

*See Gebhardt v. Gebhardt*, 198 Colo. 28, 595 P.2d 1048 (1979); *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). I think the evidence in the record here was sufficient to support the jury verdict.

Therefore, I would affirm the Court of Appeals' holding that the application of a section 402A theory of recovery to the facts of this case was appropriate and that there was sufficient evidence for the jury to find

a failure of adequate instruction, thereby creating an unreasonably dangerous defective condition.[1]

I am authorized to say that Justice LOHR and Justice QUINN join me in this dissent.

---

1. I note that products liability actions filed after July 1, 1981, are governed by section 13–21 406, C.R.S.1973 (1981 Supp.) which provides:

"(1) In any product liability action, the fault of the person suffering the harm, as well as the fault of all others who are parties to the action for causing the harm, shall be compared by the trier of fact in accordance with this section. The fault of the person suffering the harm shall not bar such person, or a party bringing an action on behalf of such a person, or his estate, or his heirs from recovering damages, but the award of damages to such person or the party bringing the action shall be diminished in proportion to the amount of causal fault attributed to the person suffering the harm. . . ."