**Robert SHULTZ and Kathy Shultz, Plaintiffs-Appellants,**

v.

**LINDEN–ALIMAK, INC., a Connecticut corporation, formerly doing business as Heede International, a Connecticut corporation, and Linden-Alimak, A.B., a Swedish corporation, Defendants-Appellees.**

Nos. 84CA0417, 84CA0702.

Colorado Court of Appeals, Div. III.

Oct. 23, 1986.

Rehearing Denied Nov. 26, 1986.

Certiorari Denied (Schultz) March 23, 1987.

Greengard & Senter, Richard D. Greengard, Scott Gelman, Denver, for plaintiffs-appellants.

Hall & Evans, Michael W. Jones, Alan Epstein, Denver, for defendant-appellee Linden-Alimak, Inc.

Kenneth C. Groves, Philip A. Rouse, Denver, for defendant-appellee Linden-Alimak, A.B.

VAN CISE, Judge.

In this product liability and negligence case, plaintiffs, Robert and Kathy Shultz, appeal from the trial court's entry of directed verdicts and judgments thereon in favor of defendants, Linden-Alimak, Inc., and Linden-Alimak, A.B. We affirm in part and reverse in part.

In December 1978, Robert Shultz (plaintiff) was employed by Hensel Phelps Construction Company (employer) as an iron worker during the construction of a building in Denver. The equipment that is the subject of this litigation was a personnel hoist operated as an elevator outside the building and held in place by metal tie-ins parallel to the ground which braced the mast of the elevator to the building itself. It was manufactured by defendant Linden-Alimak, A.B., a Swedish corporation, and sold to plaintiff's employer by defendant Linden-Alimak, Inc., a wholly owned subsidiary of Linden-Alimak, A.B.

Plaintiff had been instructed by his employer to remove a tie-in between the building and the mast of the personnel hoist on the 14th floor, the top level. This particular tie-in had to be removed to facilitate the lifting and placement of a pre-stressed concrete panel on the 14th floor.

Plaintiff climbed from the building across the tie-in towards the personnel hoist mast. He attached his safety rope to the mast, and began to loosen the bolts which connected the tie-in to the mast. His plan was to loosen the bolts, swing onto the personnel hoist mast, and then remove the bolts completely and help lower that end of the tie-in.

At the time plaintiff was performing this procedure, the cage of the personnel hoist was in operation contrary to explicit instructions given plaintiff by his employer that the hoist should be shut down before commencing work on the tie-in. Plaintiff had given this same instruction directly to the hoist operator. Nevertheless, as the cage moved down, plaintiff climbed onto the tie-in. The counterweight to the cage necessarily moved up towards plaintiff. As the cage approached the ground level, the counterweight struck plaintiff and severed his left leg below the knee.

Plaintiffs instituted this action sounding in negligence, strict liability in tort based on failure to warn, and breach of express and implied warranties. Prior to trial, the court dismissed plaintiffs' warranty claims on the basis that, as specifically pled in defendants' answers, plaintiffs had failed to allege compliance with the notice provision mandated by § 4–2–607(3)(a), C.R.S.

After plaintiffs' presentation of their case in chief, the trial court granted both defendants' motions for directed verdict on their remaining claims for relief, and dismissed plaintiffs' complaint. This appeal followed.

I.

The plaintiffs' major contentions on appeal are that the trial court erred in granting defendants' motions for directed verdict at the close of plaintiffs' case and in striking or not permitting the testimony of plaintiffs' four expert witnesses. We do not agree.

A. Directed Verdict

1. Strict Liability

The doctrine of strict liability in tort is not the equivalent of absolute liability, and the occurrence of an accident in connection with the use of a product does not necessarily make the product defective

and unreasonably dangerous. *Kysor Industrial Corp. v. Frazier*, 642 P.2d 908 (Colo.1982). Moreover, there can be no recovery under the theory of strict liability without proof of a defect attributable to the manufacturer or seller which was the cause of the plaintiff's injuries. Restatement (Second) of Torts § 402A; *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975); *Baird v. Power Rental Equipment, Inc.*, 35 Colo.App. 299, 533 P.2d 941 (1975), *aff'd*, 191 Colo. 319, 552 P.2d 494 (1976).

■ Ordinarily, the question of whether a product is in a defective condition and unreasonably dangerous is one of fact for the jury. *Kysor Industrial Corp. v. Frazier, supra; Martinez v. Atlas Bolt & Screw Co.*, 636 P.2d 1287 (Colo.App.1981). However, where the plaintiff, with full knowledge of the dangers inherent in his own misuse of the product, creates a dangerous condition in that product, there is no factual basis for submitting the case to a jury under the theory of strict liability, *Kysor, supra,* and a directed verdict is appropriate.

In the instant case, the proper procedure for plaintiff to have followed in removing the tie-in from the mast was for the hoist to have been shut down and taken out of operation prior to his commencement of work. Plaintiff was specifically instructed to do this at meetings held by his employer prior to the accident at which the entire procedure for dismantling the tie-in and placing the concrete panel was discussed.

Plaintiff testified that he was fully cognizant of the apparent danger presented by the counterweight if it was moving upward at the time that he was on the tie-in. He stated that if the instructions had been followed, the accident would not have occurred.

Thus, it was undisputed at trial that the danger presented by the counterweight in motion was apparent to plaintiff, that he knew that the hoist should have been shut down prior to his positioning himself on the mast tie-in and commencing work, that the hoist was not shut down, and that the accident would not have occurred if the

hoist had been shut down. Therefore, defendants' case is stronger than *Kysor, supra*. Here, the factors causing the accident and plaintiff's injuries were separable from the product itself, and any alleged defect in design or failure of the defendants to warn was irrelevant. *See Sowles v. Urschel Laboratories, Inc.*, 595 F.2d 1361 (8th Cir.1979).

■ Accordingly, we conclude, based on the evidence, and plaintiff's testimony in particular, that no reasonable person could differ with the court's conclusion that plaintiff created the situation which caused his injury by beginning work on the tie-in before the hoist had been shut down. Thus, there was no factual basis for submitting the case to the jury under a theory of strict liability.

### 2. Negligence

■ In order to recover for the negligent conduct of another, a plaintiff must establish that he suffered damages caused by or resulting from defendants' breach of a duty owed to him. *Leake v. Cain*, 720 P.2d 152 (Colo.1986). Here, the evidence established that the accident and injuries occurred not as a result of any negligence on the part of the manufacturer or seller but because of the failure of plaintiff and the hoist operator to follow the employer's and plaintiff's warnings and because plaintiff began work while the hoist was still in operation. Absent causation attributable to defendants, any defect in design or failure to warn was irrelevant to his negligence claim. *See Sowles v. Urschel Laboratories, Inc., supra*. Hence, directed verdicts for defendants were properly entered.

### B. Evidence Excluded

■ Plaintiffs claim the court's rulings excluding the testimony of their four expert witnesses effectively precluded them from being able to meet their burden of proof. We do not agree.

In the offers of proof, all of these experts conceded that the accident would not have occurred if the instructions had been followed. Therefore, their testimony

would have added nothing of significance, and there was no error in precluding their testimony.

## II.

■ Plaintiffs next challenge the trial court's dismissal of their breach of warranty claims because of their insufficient pleadings of notice of such breach. We perceive no error.

Plaintiffs admit no such notice was ever given, and, contrary to their contention, this defect in their pleading was raised as an affirmative defense by each defendant. Therefore, these claims were required to be dismissed as a matter of law. *See White v. Mississippi Order Buyers, Inc.*, 648 P.2d 682 (Colo.App.1982); § 4–2–607(3)(a), C.R.S.

## III.

Following the submission of bills of costs by each defendant, the court entered judgment in favor of Linden-Alimak, Inc., for $1,320.47 and in favor of Linden-Alimak, A.B., for $4,088.64. Plaintiffs contend that certain items included in these judgments were improperly allowed. We agree in part.

Plaintiffs do not contest $123 in costs to Linden-Alimak, Inc., for its docket and jury fee ($45) and service of subpoena on Phelps ($78), and do not contest $76 in costs to Linden-Alimak, A.B., for its docket fee ($20), service on Weeden ($36.50), on Ruggles ($6), on Frazier ($6), and on Wells ($7.50). Therefore, the judgment as to those items is upheld.

■ Expenses of taking depositions prior to trial, even of expert witnesses, are normally not allowed as items of costs. *Morris v. Redak*, 124 Colo. 27, 234 P.2d 908 (1951); *Brakhage v. Georgetown Associates, Inc.*, 33 Colo.App. 385, 523 P.2d 145 (1974). Section 13–16–122(1)(g), C.R.S. (1986 Cum.Supp.) allows "costs of taking depositions for the perpetuation of testimony," but there is nothing in the record to establish that the taking of the deposition of Pennington was for perpetuation rather than for ordinary discovery purposes. He

was scheduled to testify in person only as a lay witness and not as an expert. Therefore, the amount awarded Linden-Alimak, Inc., $101.25, and to Linden-Alimak, A.B., $1,066.88, as the expenses for taking Pennington's deposition and for his air fare, lodging, and expert witness fee for his deposition are disallowed.

Weeden died after his deposition had been taken, and the deposition, for that reason, was listed in the trial data certificates to be used at trial in lieu of his testimony. Therefore, the trial court properly awarded Linden-Alimak, Inc., $90.45 and Linden-Alimak, A.B., $231 for their expenses in taking Weeden's deposition.

■ Awarded to Linden-Alimak, A.B., were "trial preparation" fees for Ruggles ($500), Frazier ($500), and Shuster ($750). The first two were listed as experts on this defendant's trial data certificate; Shuster was not listed at all. Since the experts Ruggles and Frazier were scheduled to testify, they are entitled, pursuant to § 13–33–102(4), C.R.S., to "receive additional compensation." Therefore, we uphold their fees. *See Great Western Sugar Co. v. Northern Natural Gas Co.*, 661 P.2d 684 (Colo.App.1982); *Yeager Garden Acres, Inc. v. Summit Construction Co.*, 32 Colo. App. 242, 513 P.2d 458 (1973). Shuster's fee is disallowed.

■ Linden-Alimak, Inc., was awarded $47.50 for its docket fee and cost of service of its third-party complaint against Hensel Phelps Construction Company. Since this complaint was dismissed on Hensel Phelps' motion for failure to state a claim, this defendant was not the "prevailing party" and is not entitled to be reimbursed by plaintiffs for these expenses.

■ Expenses incurred for photocopies, blueprints, long distance phone calls, and postage, were allowed as costs, $958.27 to Linden-Alimak, Inc., and $964.76 to Linden-Alimak, A.B. There is no statutory authorization for including these items as part of the costs, *see* § 13–16–122, C.R.S. (1986 Cum.Supp.), and they are disallowed.

## IV.

In view of our affirmance of the directed verdict, plaintiffs' remaining contentions of error need not be addressed.

The judgments entered on the directed verdict are affirmed. As to the costs, $213.45 of the charges claimed by Linden-Alimak, Inc., are allowed and $1,107.02 are disallowed; $1,307 of the charges claimed by Linden-Alimak, A.B., are allowed and $2,781.64 are disallowed, and the cause is remanded for modification of the judgments consistent with this opinion.

KELLY and BABCOCK, JJ., concur.